**UNITED STATES of America, Appellee,**

**v.**

**Deborah BRUMBY, Appellant.**

**No. 1247, Docket 93–1492.**

United States Court of Appeals,
Second Circuit.

Argued March 30, 1994.

Decided April 21, 1994.

Richard B. Lind, New York City, for appellant.

Julie E. Katzman, Asst. U.S. Atty., Brooklyn, NY (Zachary W. Carter, U.S. Atty., and Susan Corkery, Asst. U.S. Atty., on the brief), for appellee.

Before TIMBERS, CARDAMONE, and WINTER, Circuit Judges.

TIMBERS, Circuit Judge:

Appellant appeals from a judgment of conviction of conspiracy to commit extortion entered upon her plea of guilty in the Eastern District of New York, Denis R. Hurley, *District Judge.* The court increased appellant's base offense level under the Sentencing Guidelines for the display of a firearm during the extortion.

Appellant contends (1) that her co-conspirator did not display a firearm within the meaning of U.S.S.G. § 2B3.2(b)(3)(A)(iii) (1992), and (2) that it was not reasonably foreseeable that a firearm would be displayed during the extortion.

We affirm.

## I.

We summarize only those facts and prior proceedings believed necessary to an understanding of the issues raised on appeal.

On January 21, 1993, appellant Brumby pleaded guilty to conspiring to extort money from her employer, Jeffrey Cooper. At sentencing, the court found that Brumby had planned and orchestrated the extortion plot. The events giving rise to her plea are as follows.

Cooper owned and operated an automobile leasing company known as Sandan Holding Corporation, which was located in Queens, New York. Brumby was employed at Sandan as a bookkeeper. During several weeks in the Spring of 1992, Cooper received threatening telephone calls at his home and office from a man who identified himself as "Johnny". The caller threatened to harm Cooper and his family unless he received payment of $75,000. After Cooper told Brumby of the threats, she began to act as Cooper's intermediary with Johnny. Brumby later warned Cooper that Johnny was

desperate. She cautioned Cooper not to call the police.

On May 21, 1992, Cooper met with Brumby, her boyfriend Melvin Sanders, and a man identified as "Mitch" at the Sandan office. Brumby informed Cooper that she had arranged to meet with Johnny later that day and that Sanders and Mitch were there to protect her. During this meeting, Sanders took a gun out of a whiskey pouch and attempted to hand it to Brumby. After Brumby refused to take the gun, Sanders passed the gun to Mitch. The pouch was identified as belonging to Brumby.

On June 5, 1992, Brumby and her two co-conspirators—George Johnson and Melvin Sanders—were arrested after Johnson arrived at Cooper's office, identified himself as Johnny, and demanded money. They subsequently were charged in a one-count indictment with conspiring to extort money in violation of 18 U.S.C. § 1951 (1988). On January 21, 1993, Brumby pleaded guilty to this charge.

In March 1993, the Probation Department issued Brumby's presentence report (PSR), which calculated Brumby's sentencing range in accordance with the Guideline for Extortion by Force or Threat of Injury or Serious Damage, U.S.S.G. § 2B3.2 (1992). In accordance with this Guideline, the PSR assigned Brumby a base offense level of 18. Reasoning that a firearm was displayed during the offense, the PSR added 5 levels to the base offense level. U.S.S.G. § 2B3.2(b)(3)(A)(iii) (1992). The PSR also added two levels on the ground that the offense involved an express threat of death and two levels for the amount of money demanded by the conspirators. U.S.S.G. §§ 2B3.2(b)(1) and 2B3.2(b)(2) (1992). The PSR then subtracted 3 levels for acceptance of responsibility. U.S.S.G. § 3E1.1 (1992). This resulted in a total offense level of 24, which carried with it a sentencing range of 51 to 63 months.

Brumby raised two objections to the PSR. First, she challenged the five-level upward adjustment based on the display of a firearm. She said that no firearm was displayed at the meeting with Cooper. Second, she denied that the conspirators demanded $75,000. She eventually conceded this second point after the government submitted tape-recordings of Johnny's demand for $75,000.

On June 25, 1993, the court held a sentencing hearing. The only remaining factual dispute was whether a gun had been displayed in Cooper's office. Cooper testified that he was two feet from the conspirators when Sanders produced a black and silver revolver from a pouch and attempted to hand it to Brumby. Cooper further testified that he was frightened by the sight of the revolver and that the display of the revolver caused him to realize that the situation had become more serious than he previously had imagined. Cooper also testified that at the time of this incident he suspected that Sanders was Johnny and that Brumby was involved in the extortion scheme.

Brumby testified to refute Cooper's testimony. She denied that Sanders displayed a firearm during the meeting with Cooper.

At the close of the testimony, Judge Hurley announced his findings: that Sanders displayed a revolver within the meaning of § 2B3.2(b)(3)(A)(iii), that the display of the gun instilled fear in Cooper that he and his family might become subject to serious injury, and that Brumby had orchestrated the extortion scheme.

The court then sentenced Brumby in accordance with the PSR's recommendations. She was sentenced to fifty-one months imprisonment, three years supervised release, and a $50 special assessment.

This appeal followed.

## II.

We review the sentencing court's factual findings under the clearly erroneous standard. *United States v. Skowronski*, 968 F.2d 242, 249 (2 Cir.1992). We review *de novo* the court's decision since application of the Guidelines approaches a purely legal question. *United States v. Vazzano*, 906 F.2d 879, 883 (2 Cir.1990).

### (A) THE DISPLAY OF THE FIREARM

Brumby contends that Sanders did not "display" a firearm within the meaning of § 2B3.2(b)(3)(A)(iii), which provides for a

five-level upward adjustment "if a firearm was brandished, displayed, or possessed" during the course of an extortion attempt. She contends that, since Sanders did not point the revolver directly at Cooper, he did not "display" a firearm within the meaning of this section. We reject this contention.

■ The court properly found that Sanders displayed a firearm within the meaning of § 2B3.2(b)(3)(A)(iii). True, Sanders did not point the revolver directly at Cooper. If he had done so, he would have "brandished" the revolver as that term is defined in the Guidelines. U.S.S.G. § 1B1.1, comment. (n. (1)(c)) (" 'Brandished' with reference to a dangerous weapon (including a firearm) means that the weapon was pointed or waved about, or displayed in a threatening manner."). Although Sanders did not brandish the revolver, the facts make it clear that he displayed it.

We accord "display" its plain meaning, since it is not defined in the Guidelines. In the instant action, Sanders displayed the gun during the extortion attempt when he removed the revolver from Brumby's pouch in full view of Cooper during the meeting. This action constituted a "display" of the firearm within the plain meaning of § 2B3.2(b)(3)(A)(iii).

We agree with the court's finding that Brumby's co-conspirator displayed a firearm within the meaning of § 2B3.2(b)(3)(A)(iii).

### (B) THE DISPLAY OF THE FIREARM WAS REASONABLY FORESEEABLE

Brumby also contends that the court erred in sentencing her based on her co-conspirator's display of the firearm. She asserts that she had no prior knowledge that Sanders was going to display the firearm and that it was not reasonable for her to foresee that Sanders would display a firearm. We disagree.

■ Brumby was liable for the display of the firearm if (1) the display was committed in furtherance of the conspiracy, and (2) the display was reasonably foreseeable. U.S.S.G. § 1B1.3(a)(1)(B) (1992). We review the court's factual findings concerning reasonable foreseeability under the clearly erroneous standard. *United States v. Ekwunoh*, 12 F.3d 368, 370 (2 Cir.1993); *United States*

*v. Stevens*, 985 F.2d 1175, 1188–89 (2 Cir. 1993). We believe that the display of the firearm was reasonably foreseeable by Brumby, who was the owner of the pouch where the gun was kept. The conspirators in the instant action repeatedly threatened violence against Cooper and his family. Moreover, the court found that Brumby was responsible for the planning of the extortion scheme. Since Brumby was the mastermind of an extortion scheme, an integral part of which was the threat of violence, it was reasonably foreseeable that a member of the conspiracy might display a firearm during the course of the conspiracy. In fact, the court implicitly reached this conclusion when it attributed the displaying of the gun directly to Brumby, finding that it "was meant by the defendant to instill fear into the victim."

The court's finding was not clearly erroneous.

### III.

To summarize:

The court properly adjusted upward appellant's offense level for the display of a firearm. The court also properly found that the display of the firearm was reasonably foreseeable.

Affirmed.