**UNITED STATES of America, Appellee,**

v.

**Roberto MEDINA, Defendant–Appellant,**

**Daniel Delgado, also known as Pepa and Louie Villanueva, also known as Tito, Defendants.**

No. 173; Docket 95–1131.

United States Court of Appeals, Second Circuit.

Argued Dec. 22, 1995.

Decided Jan. 23, 1996.

Guy Petrillo, Assistant United States Attorney (Mary Jo White, United States Attorney for the Southern District of New York), New York City, for Appellee United States of America.

Sanford M. Katz, Katz & Weinstein, New York City, for Defendant–Appellant Roberto Medina.

Before: JACOBS, CALABRESI, Circuit Judges and SPATT, District Judge.*

PER CURIAM:

Defendant-appellant Roberto Medina appeals from a judgment entered on February 24, 1995, in the United States District Court for the Southern District of New York (Mukasey, *J.*) convicting him, following a jury trial, of attempting and conspiring to commit a robbery that would affect interstate commerce in violation of 18 U.S.C. § 1951. The district court determined that it was reasonably foreseeable to Medina that his co-conspirators would carry and brandish firearms during the crime, and for that reason adjusted Medina's base offense level upward by five levels under U.S.S.G. §§ 2B3.1(b)(2)(C) and 1B1.3(a)(1)(B). Medina claims that (a) the district court improperly adjusted his offense level upward under U.S.S.G. § 2B3.1 based on a clearly erroneous factual finding; and (b) the district court should have adjusted his offense level downward under U.S.S.G.

§ 2X1.1 because the crime was impossible to complete.

For the reasons set forth below, we affirm the sentence.

## BACKGROUND

On May 13, 1993, Roberto Medina was convicted by a jury of attempting and conspiring to rob the payroll of the Foundation Construction Company in Brooklyn, New York, in violation of 18 U.S.C. § 1951. Medina was also convicted of aiding and abetting a co-defendant in carrying a firearm during the robbery, in violation of 18 U.S.C. § 924(c). The circumstances giving rise to Medina's conviction are discussed at length in *United States v. Medina*, 32 F.3d 40, 42–43 (2d Cir.1994). Familiarity with that opinion is assumed. On July 26, 1993, Medina was sentenced to 46 months imprisonment on the attempted robbery conviction and to a consecutive term of 60 months on the aiding and abetting conviction. On August 10, 1994, this Court affirmed the attempted robbery conviction but reversed the aiding and abetting conviction on the ground that Medina did not "perform[ ] some act that directly facilitated or encouraged the use or carrying of a firearm." *Id.* at 45. By order dated January 9, 1995, this Court amended the mandate to authorize the district court to resentence Medina.

On February 17, 1995, the district court resentenced Medina on the attempt and conspiracy conviction in accordance with section 2B3.1 of the Sentencing Guidelines—the provision for the underlying substantive crime of robbery. The base offense level under that section is 20. U.S.S.G. § 2B3.1(a). Where a firearm is "brandished, displayed, or possessed," that base offense level is enhanced by five levels. *Id.* § 2B3.1(b)(2)(C). Under section 1B1.3(a)(1)(B), all "reasonably foreseeable acts and omissions of others" in furtherance of a conspiracy may be taken into account in determining a sentence. Based on

---

* Hon. Arthur Spatt, United States District Judge for the Eastern District of New York, sitting by designation.

(i) the nature of the planned robbery, (ii) Medina's proffer of a firearm to a co-conspirator on the day of the attempted robbery and (iii) his co-conspirator's possession of firearms during the attempted crime, the district court determined that it was reasonably foreseeable to Medina that his co-conspirators would brandish, display or possess firearms during the crime. Accordingly, the district court determined Medina's adjusted base level to be 27, consisting of the base offense level of 20; an additional five levels under U.S.S.G. § 2B3.1(b)(2)(C); and an additional two levels under U.S.S.G. § 3B1.1(c) to reflect Medina's role as the leader of the robbery enterprise. The district court sentenced Medina to a prison term of 78 months, the lowest term in the applicable Guideline range.

Approximately three weeks before that sentencing hearing, this Court decided *United States v. Amato*, 46 F.3d 1255 (2d Cir. 1995), which holds that, as a consequence of an amendment to the Guidelines effective in 1993, the offense level for inchoate offenses under 18 U.S.C. § 1951 is to be determined under section 2X1.1 of the Guidelines. *Id.* at 1261. *Amato* further holds that a defendant (such as Medina) whose offense was committed prior to the effective date of the 1993 Guidelines may elect to be sentenced under the pre–1993 Guidelines (which applied section 2B3.1) if his sentence would be lower under that section than under section 2X1.1. *Id.* at 1262. Neither side brought *Amato* to the court's attention prior to the February 17, 1995 sentencing proceeding. By a letter to the court dated July 19, 1995, the parties stipulated to a withdrawal of Medina's pending appeal (without prejudice to reinstatement) in order to hold an additional sentencing proceeding in view of *Amato*.

On July 21, 1995, the district court held the additional sentencing proceeding to determine whether Medina's sentencing range would be lower under section 2X1.1. Under that section, the base offense level is the

> base offense level from the guideline for the substantive offense, plus any adjustments from such guideline for any intended offense conduct that can be established with reasonable certainty.

U.S.S.G. § 2X1.1(a). In Medina's case, section 2X1.1 required the district court to apply section 2B3.1 (the relevant provision for the underlying substantive offense), plus any adjustments from that section that could be established with reasonable certainty. Accordingly, Medina's base offense level was 20 plus a five-level enhancement under section 2B3.1(b)(2)(C) because it was reasonably certain that Medina's co-conspirators would use weapons; a one-level enhancement under section 2B3.1(b)(6)(B) because Medina and his co-conspirators planned to steal more than $10,000; and a two-level enhancement under section 3B1.1(c) for leading the conspiracy. This yielded an offense level of 28.

The court next considered whether Medina was entitled to a three-level decrease authorized by section 2X1.1(b)(2). That section provides for such a decrease in a conspiracy offense

> *unless* the defendant or a co-conspirator completed all the acts the conspirators believed necessary on their part for the successful completion of the substantive offense *or* the circumstances demonstrate that the conspirators were about to complete all such acts but for apprehension or interruption by some similar event beyond their control.

U.S.S.G. § 2X1.1(b)(2) (emphasis added). The court found that, under the circumstances, the conspirators were about to complete all such acts but for the intervention of the police, and therefore held that Medina was not entitled to a three-level decrease. Since Medina's total offense level of 28 under section 2X1.1 was higher than his offense level of 27 under section 2B3.1, the court ordered that the original 78 month sentence imposed under section 2B3.1 be maintained.

Medina has since reinstated his notice of appeal (which was timely as originally filed on February 24, 1995), and therefore this court has appellate jurisdiction pursuant to 28 U.S.C. § 1291.

## DISCUSSION

■ The factual findings of a sentencing court that bear upon reasonable foreseeability are reviewed by this Court for clear error. *United States v. Brumby*, 23 F.3d 47, 50 (2d Cir.), *cert. denied*, ⸺ U.S. ⸺, 115 S.Ct. 250, 130 L.Ed.2d 171 (1994); *United States v. Skowronski*, 968 F.2d 242, 249 (2d Cir.1992). Where a sentencing court's application of the Guidelines "approaches a purely legal question," we employ a *de novo* standard of review. *Brumby*, 23 F.3d at 49; *see also United States v. James*, 998 F.2d 74, 82 (2d Cir.), *cert. denied*, ⸺ U.S. ⸺, 114 S.Ct. 415, 126 L.Ed.2d 362 (1993).

On appeal, Medina argues that the district court's application of both section 2B3.1 and section 2X1.1 was in error. We will address each of these contentions separately.

### A. *Section 2B3.1.*

The district court found that it was reasonably foreseeable to Medina that his co-conspirators would possess or brandish weapons in the commission of the crime. Medina argues that the district court was precluded from making this finding, and points to this Court's statements in *United States v. Medina* that (a) Medina did not "perform[ ] some act that directly facilitated or encouraged the use or carrying of a firearm," 32 F.3d at 45; and (b) "[t]here is no evidence that Medina warned his coconspirators that the intended victims would be armed, or that he counseled the brandishing of a firearm." *Id.* at 46. On this ground, Medina urges that the district court improperly enhanced his sentence by five levels under section 2B3.1(b)(2)(C).

■ Medina's argument is unpersuasive for two reasons. First, our prior decision in this case determined only that Medina did not perform an *act* that would support aiding and abetting liability under 18 U.S.C. § 924(c). *Id.* at 45 ("Medina cannot be convicted as an aider and abettor unless he 'consciously assisted the commission of the specific crime in some active way.'") (quoting *United States v. Dickerson*, 508 F.2d 1216, 1218 (2d Cir.1975)). At the sentencing phase, the inquiry is different. At sentenc-

ing, the defendant is responsible if an act performed in furtherance of a conspiracy by a co-conspirator was "reasonably foreseeable," regardless of whether the defendant acted to promote it or facilitate it. U.S.S.G. § 1B1.3(a)(1)(B); *see also id.* § 1B1.3, Application Note 1 ("The principles and limits of sentencing accountability under this guideline are not always the same as the principles and limits of criminal liability."). Thus a defendant may avoid aider and abettor liability by virtue of the fact that he took no act to assist the brandishing or carrying of a firearm, yet still be held to account at sentencing if it was "reasonably foreseeable" that a co-conspirator would brandish or carry one.

■ Second, the district court determined that it was reasonably foreseeable to Medina that his co-conspirators would use firearms in the robbery attempt. Medina disputes this finding, and points to our earlier holding that he did not induce or prompt his co-conspirators to carry a firearm. *See Medina*, 32 F.3d at 45. For present purposes, however, the significant observations in that opinion are that, in the logistical stages of the crime, Medina "learned that [a co-conspirator] intended to carry a gun," *id.*, "offered to provide an additional gun, and eventually delivered a revolver" to a co-conspirator, *id.*, and that, immediately prior to the attempted robbery, Medina learned that "the use of [a] firearm was a foregone conclusion." *Id.* at 46. Moreover, the crime that Medina masterminded was the robbery of a construction company during working hours. As Judge Mukasey observed at the sentencing hearing, it is hard to imagine that Medina's plan called for the ski-masked co-conspirators to burst into the construction company's offices and shout, "Give me your money or ... I will think ill of you!" *See Brumby*, 23 F.3d at 50 ("Since Brumby was the mastermind of an extortion scheme, an integral part of which was the threat of violence, it was reasonably foreseeable that a member of the conspiracy might display a firearm during the course of the conspiracy."). Given this ample evidence that the brandishing of weapons was reasonably fore-

seeable to Medina, the district court did not err in enhancing Medina's sentence by five levels under section 2B3.1(b)(2)(C).

### B. *Section 2X1.1.*

■ Next, Medina argues that the district court clearly erred in determining that—but for the intervention of the police—the conspirators were about to complete the robbery, and that the court thus improperly denied him a three-level reduction under section 2X1.1(b)(2). That section, in relevant part, provides for a three-level decrease *unless* "the circumstances demonstrate that the conspirators were *about to complete* all such acts [believed necessary for the completion of the substantive offense] but for apprehension or interruption by some similar event beyond their control." U.S.S.G. § 2X1.1(b)(2) (emphasis added). Medina contends that the conspiracy was doomed early on, because the police were monitoring the conspirators for several days prior to the planned robbery and because one of the participants in the robbery scheme became a confidential informant shortly after the conspiracy was hatched. Under these circumstances, Medina asks, how can it be said that he and his co-conspirators were "about to complete" the crime?

■ It may be unlikely, or even impossible, for a conspiracy to achieve its ends once the police have detected or infiltrated it. But that circumstance is not dispositive in determining whether a three-level reduction is warranted under section 2X1.1(b)(2), because that section determines punishment based on the *conduct* of the defendant, not on the probability that a conspiracy would have achieved success. As the First Circuit has stated, "near accomplishment of the criminal object normally poses enough risk of actual harm, and reveals enough culpability" to defeat "the reduction available for conspiracies and attempts that have not progressed very far." *United States v. Chapdelaine,* 989 F.2d 28, 36 (1st Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 696, 126 L.Ed.2d 663 (1994).

Many pre-existing circumstances may doom a conspiracy, without rendering the conspirators any less culpable for their acts. In *Chapdelaine,* a scheduling miscalculation rendered it impossible for the conspirators to accomplish their heist because the armored truck had long departed; yet the conspirators, having arrived at the scene bearing guns, disguises and other instruments of crime, were not entitled to a reduction. *Id.* at 35–36. In *United States v. Toles,* 867 F.2d 222, 223 (5th Cir.1989), a would-be bank robber, having demanded money from a teller under threat of physical violence, was not entitled to a reduction simply because the teller never had the keys to the bank vault. In *Halmos v. United States,* 872 F.Supp. 762, 766 (D.Hawaii 1995), an armed robber fled after realizing that the bank teller from whom he had just demanded money ("or you will die") happened to be his sister-in-law; that the perpetrator was bound to be identified by a relative in the bank did not entitle him to a reduction.

In arguing that he is entitled to a three-level reduction because the conspiracy was doomed from an early date, Medina is seeking the benefit of the constable's diligence. Yet as the cases we have cited illustrate, what matters under the Guidelines is that Medina and his co-conspirators were "about to complete" the crime, not that they were "about to succeed." The fact that Medina's scheme was monitored by the police from an early stage does not render him and his co-conspirators any less accountable for arriving at the construction company's doorstep armed and ready to execute their plan. *See United States v. Yellowe,* 24 F.3d 1110, 1112 (9th Cir.1994) (affirming denial of reduction where defendant attempted to defraud credit card holders using computers that were supplied surreptitiously by Secret Service and that were never connected to bank's computer system); *United States v. Johnson,* 962 F.2d 1308, 1313–14 (8th Cir.1992) (affirming denial of reduction where federal agents were waiting in bank's parking lot for conspirators), *cert. denied,* 507 U.S. 974, 113 S.Ct. 1418, 122 L.Ed.2d 788 (1993); *Chapde-*

*laine,* 989 F.2d at 35 (affirming denial of reduction where conspirators were monitored by police from inception of scheme to rob armored truck); *see also* U.S.S.G. § 2X1.1, Background (Where the substantive offense is "prevented on the verge of completion by the intercession of law enforcement authorities. . . . no reduction of the offense level is warranted.").

In this case, there is an abundance of evidence supporting the district court's conclusion that Medina's co-conspirators were "about to complete" the robbery at the time that the police interceded. Medina or his co-conspirators had obtained a detailed floor plan of the premises. They planned the robbery for a date on which the company would be holding a large amount of cash to be used for Christmas bonuses for its employees. They had procured two firearms, several sets of handcuffs, a neckerchief and ski masks for use during the crime. They had driven to the offices of the construction company, parked their getaway vehicle in a nearby location, passed through a gate located at the front of the office building and approached the front door. It was not until this point that the police intervened to prevent the pending robbery from being completed. From these undisputed circumstances, the district court was justified in concluding that the co-conspirators were "about to complete" the robbery, but for police intervention. As the First Circuit stated in *Chapdelaine* in denying a reduction to the foiled robbers of the armored-truck:

> It is nearness of the crime to achievement—not the precise nature of the involuntary interruption—that defeats the reduction available for conspiracies and attempts that have not progressed very far. *This one progressed far enough.*

*Chapdelaine,* 989 F.2d at 36 (emphasis added).

Medina contends, however, that all these preparations and arrangements proceeded under the eye of the police, and, because of that, the police were in a position to stop the progress of the crime before it reached the threshold of completion. The radical fallacy of this argument is the assumption that the police controlled how far the crime would progress. Medina fails to appreciate that he and his co-conspirators had the independent ability to control how far things would go. The surveillance and infiltration by the police did not affect the defendants' free will, and did not make the crime a police exercise. The district court did not err in denying a three-level downward departure under section 2X1.1 of the Guidelines.

### C.  *Sentencing*

Because Medina's offense level under section 2X1.1 was 28, and his offense level under section 2B3.1 was 27, the district court correctly maintained his sentence entered in its February 24, 1995 judgment under section 2B3.1. *See United States v. Amato* 46 F.3d 1255, 1262 (2d Cir.1995) (defendant who committed crime prior to effective date of revision to Guidelines entitled to be sentenced under section that results in lower offense level).

### CONCLUSION

For the foregoing reasons, the February 24, 1995 judgment of the district court is AFFIRMED.