12-3446-cr
*United States v. Nicolescu*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# SUMMARY ORDER

Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 5th day of November, two thousand thirteen.

PRESENT:

JOHN M. WALKER, JR.,
JOSÉ A. CABRANES,
BARRINGTON D. PARKER,
*Circuit Judges.*

———————————————————————

UNITED STATES OF AMERICA,

*Appellee*,

v.                                                          No. 12-3446-cr

EMANUEL NICOLESCU,

*Defendant-Appellant*,

MICHAEL N. KENNEDY also known as NICOLAE HELERA,

*Defendant.*[1]

———————————————————————

[1] The Clerk of Court is directed to amend the caption of this case to conform to the listing of the parties shown above.

**FOR EMANUEL NICOLESCU:** ALEXEY V. TARASOV (Gerald J. McMahon, New York, NY, *on the brief*), Houston, TX.

**FOR APPELLEE:** DAVID E. NOVICK (Sandra S. Glover, *on the brief*), Assistant United States Attorneys, *for* Deirdre M. Daly, Acting United States Attorney, United States Attorney's Office for the District of Connecticut, Hartford, CT.

Appeal from a judgment of conviction, entered August 17, 2012, of the United States District Court for the District of Connecticut (Mark R. Kravitz, *Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that judgment of the District Court is **AFFIRMED**.

Emanuel Nicolescu ("defendant" or "Nicolescu") appeals from a judgment of the District Court sentencing him principally to 240 months' imprisonment for attempted extortion and conspiracy to commit extortion, in violation of the Hobbs Act, 18 U.S.C. § 1951(a), and for possession of a stolen vehicle, in violation of 18 U.S.C. § 2313(a). On appeal, Nicolescu challenges the sufficiency of evidence at trial with regard to the "interstate commerce" element of the Hobbs Act convictions and the procedural reasonableness of the sentence imposed by the District Court. We assume the parties' familiarity with the underlying facts and the procedural history of the case, to which we refer only as necessary to explain our decision to affirm.

## BACKGROUND

This case arises out of the much-publicized invasion of the Connecticut estate of Anne Bass and her longtime-companion Julian Lethbridge. Between 11:00 and 11:30 p.m. on April 15, 2007, Bass and Lethbridge (the "victims") were accosted in Bass's Connecticut residence by three masked men armed with guns and knives. The intruders bound the victims' hands with zipties, blindfolded them, and took them to the bathroom, where they then prepared a syringe and injected a foreign substance into the victims' arms. The victims were then told that they had been injected with a virus that is almost always fatal within 20-24 hours; however, in exchange for $8.5 million, the intruders would administer a life-saving antidote.

The victims explained that they did not have ready access to that amount of cash in Connecticut, and that such a sum would raise "red flags" with Bass's accountant in Texas who paid her bills. Lethbridge suggested instead that they instruct the accountant to wire $250,000 to his account in New York, which would not raise concerns with the accountant, and the intruders could then take him to the bank the following day to retrieve the money. Ultimately, the perpetrators reverted to their demand for $8.5 million. Near the end of the ordeal, Bass was taken to her bed,

where she fell asleep. Once Bass woke up, she managed to locate a pair of scissors to free herself and Lethbridge. By that time, the perpetrators had stolen one the Jeeps on the estate and driven away.

The ensuing investigation revealed that one of the intruders was Nicolescu, who had worked as a butler at Bass's estate from March 2, 2006 until May 8, 2006, when he was fired. On January 23, 2011, Nicolescu was arrested as he flew from Romania into Chicago, Illinois, after initially having fled the country. On March 22, 2012, he was convicted by a jury for attempting and conspiring to extort Bass and Lethbridge in violation of 18 U.S.C. § 1951(a), and for stealing Bass's Jeep afterward in violation of 18 U.S.C. 2313(a). The District Court sentenced Nicolescu on August 17, 2012, and this appeal followed.

## DISCUSSION

On appeal, Nicolescu challenges the sufficiency of evidence at trial with regard to the "interstate commerce" element of the Hobbs Act convictions, and the procedural reasonableness of the sentence imposed by the District Court.

### A.

Although we review sufficiency challenges *de novo*, *United States v. Desposito*, 704 F.3d 221, 226 (2d Cir. 2013), "a defendant challenging the sufficiency of the evidence that led to his conviction at trial bears a heavy burden," *United States v. Coplan*, 703 F.3d 46, 62 (2d Cir. 2012) (internal quotation marks omitted). We "must view the evidence in the light most favorable to the government, crediting every inference that could have been drawn in the government's favor, and deferring to the jury's assessment of witness credibility, and its assessment of the weight of the evidence." *United States v. Chavez*, 549 F.3d 119, 124 (2d Cir. 2008) (internal quotation marks and alterations omitted). We must also uphold the judgment of conviction if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

The Hobbs Act proscribes, *inter alia*, extortion, attempted extortion, and conspiracies to commit extortion that "in any way or degree obstruct[ ], delay[ ], or affect[ ]" interstate commerce. 18 U.S.C. § 1951(a). Nicolescu argues that the evidence supporting his Hobbs Act convictions was legally insufficient in that it did not satisfy the interstate commerce element of the Act. While the jurisdictional element "must be proven beyond a reasonable doubt, just as any other element, we recognize that the effect on interstate commerce need only be slight or subtle." *United States v. Needham*, 604 F.3d 673, 681 (2d Cir. 2010); *see also United States v. Fabian,* 312 F.3d 550, 554 (2d Cir. 2002) ("Our precedent requires the [G]overnment make only a *de minimis* showing to establish the necessary nexus for Hobbs Act jurisdiction."). In the context of attempt and conspiracy, "the

3

relevant inquiry is not how much money was at the crime scene . . . but rather how much money [the defendant] intended to steal and what effect the theft of that amount would have had on interstate commerce." *United States v. Wilkerson*, 361 F.3d 717, 731 (2d Cir. 2004).

For the purposes of analyzing the sufficiency of the evidence on the interstate commerce element, we have drawn a distinction between the extortion of an individual and the extortion of a business. *United States v. Perrotta*, 313 F.3d 33, 36 (2d Cir. 2002). When an individual is the target of an extortion, we have enumerated the following factors, *inter alia*, to help guide the interstate commerce inquiry: whether "the victim directly participated in interstate commerce"; whether "the harm or potential harm to the individual would deplete the assets of a company engaged in interstate commerce"; or whether "the individual was extorted of a sum so large . . . that the amount at stake cumulatively had some effect on interstate commerce." *Id.* at 38. For example, in *United States v. Jamison*, 299 F.3d 114 (2d Cir. 2002), we affirmed a Hobbs Act conviction on the grounds that a successful robbery of $21,000 from the home of a drug dealer and business owner "would have substantially diminished his inventory purchases of clothing manufactured [out of state], and cocaine originating [out of state]." *Id.* at 119.

At Nicolescu's trial, the government offered the following evidence to satisfy the interstate commerce element required by the Hobbs Act. By virtue of her wealth, Bass supported numerous philanthropic causes in the United States and overseas, including the lending of art and antiques from around the world to various institutions for exhibitions. Had the intruders succeeded in their scheme to obtain the sum of $8.5 million, this would have substantially affected, if not diminished, the scope of her global charitable activities. Moreover, in order for the intruders to have obtained the funds, Bass's accountant would have had to wire the money from Texas to Connecticut, which would have been retrieved by Lethbridge from a bank the following day. A reasonable juror, hearing this evidence, could have found that the attempted extortion could have affected interstate commerce "in any way or degree." 18 U.S.C. § 1951(a).

Nicolescu relies on *Needham* for the proposition that "the sheer *amount* of money, standing alone, does not demonstrate an interstate effect." 604 F.3d at 683. Yet the *Needham* court noted that the government had offered "no proof whatsoever" of the impact on interstate commerce. *Id.* at 682. The same cannot be said here.

Accordingly, Nicolescu's challenge to the sufficiency of the evidence is meritless.

**B.**

Nicolescu also challenges the procedural reasonableness of his sentence, asserting five errors in the District Court's calculation of the Guidelines. We address each in turn.

4

1. *Organizer/Leader Enhancement.* Nicolescu first argues that the District Court erred in applying a two-point enhancement for his leadership or organization of the offense under U.S.S.G. § 3B1.1(c). We review imposition of this enhancement *de novo* and the District Court's findings of fact supporting its conclusions for clear error. *See United States v. Hertular*, 562 F.3d 433, 449 (2d Cir. 2009). In this case, the District Court properly applied § 3B1.1(c) to impose an organizer/leader role, and its factual findings are supported by the record. At sentencing, the District Court found that, as compared to his co-conspirators, Nicolescu was the only one with a connection to Bass by virtue of his prior employment as butler. He therefore possessed unique information enabling him to direct the criminal plan—such as when Bass would be in the estate, which doors would be unlocked, whether the alarm would be set, and the location of staff and closets in which to hide. The District Court also could reasonably infer that Nicolescu drove the getaway car, based on his DNA found on the steering wheel of the stolen Jeep and his familiarity with the area. Finally, the District Court justifiably found that Nicolescu was the common link between the other two co-conspirators.

2. *Grouping.* Nicolescu next contends that the District Court erred in dividing his conspiracy conviction into two "groups" based on the two victims of the offense. When a defendant is convicted of a single count charging a conspiracy to commit multiple substantive offenses, the single count "shall be treated as if the defendant had been convicted on a separate count of conspiracy for each offense that the defendant conspired to commit." U.S.S.G. § 1B1.2(d); *see also id.* § 3D1.2, cmt. n.8. In certain conspiracies, however,

> [p]articular care must be taken in applying subsection (d) because there are cases in which the verdict or plea does not establish which offense(s) was the object of the conspiracy. In such cases, subsection (d) should only be applied with respect to an object offense alleged in the conspiracy count if the court, were it sitting as a trier of fact, would convict the defendant of conspiring to commit that object offense.

*Id.* § 1B1.2(d) cmt. n. 4 (hereinafter, "Application Note 4"). The District Court found at sentencing that Count One charged a multi-object conspiracy, and that each predicate object—the extortion of Bass and the extortion of Lethbridge—should be treated as separate counts excluded from grouping. Nicolescu claims this calculation was erroneous because the Court did not make the findings required by Application Note 4.

Because Nicolescu raises this argument for the first time on appeal, we review the calculation for "plain error."[2] *See* Fed. R. Crim. P. 52(b). The government argues that there is no error because

---

[2] In his sentencing reply memorandum Nicolescu objected to what he characterized as a post-verdict amendment of the indictment in violation of his Due Process rights. At sentencing, Nicolescu's counsel only made passing mention of the issue of grouping, stating, "we also raised an objection to the separate—to dividing Count Two

the judicial finding required by Application Note 4 is not warranted in cases, such as this one, where "[a] verdict of guilty on the conspiracy count . . . would establish with precision the offenses a judge could 'permissibly' consider at sentencing." *United States v. Robles*, 562 F.3d 451, 455 (2d Cir. 2009). Yet the jury rendered a general verdict that did not establish whether Nicolescu was guilty of conspiring to extort both Bass and Lethbridge. *See United States v. Malpeso*, 115 F.3d 155, 168 (2d Cir. 1997) (noting that "the conspiracy conviction is satisfied *if any one of the objects is proved beyond a reasonable doubt*" (emphasis supplied)).[3] Accordingly, it is arguable that the District Court was required to determine, like the sentencing court in *Robles*, that both extortions had been proven beyond a reasonable doubt. *See Robles,* 562 F.3d at 455-56 (2d Cir. 2009); *see also Malpeso,* 115 F.3d at 167-68 (holding that § 1B1.2(d) determination must be "beyond a reasonable doubt").

Even if it was error in the circumstances presented, the error did not affect Nicolescu's substantial rights or seriously affect the fairness of his sentencing. If the District Court had applied a heightened standard of proof, it likely would have reached the same conclusion. The record is replete with evidence that Nicolescu conspired and attempted to extort both victims, which presumably explains Nicolescu statement in his own post-trial memorandum that the "the evidence adduced at trial" demonstrated "an attempted robbery by *extortion of a Connecticut couple* in their home on Sunday night in April 2007." Gov't App'x 504 (emphasis supplied).

3. *Demand Enhancement.* Nicolescu also challenges the District Court's imposition of a seven-level increase for the $8.5 million the intruders had demanded. However, this enhancement was a correct application of U.S.S.G. §§ 2B3.2(b)(2) and 2B3.1(b)(7)(H) under which the offense level is increased by seven when the relevant amount demanded is in excess of $5 million. Nicolescu's argument that the District Court should have used the so-called "probable loss" misapprehends U.S.S.G. § 2B1.1 and, accordingly, is without merit. *Cf. United States v. Zhuang*, 270 F.3d 107, 109 (2d Cir. 2001) (rejecting the argument that "the § 2B3.2(b)(2) enhancement . . . should depend on the defendant's intent or reasonable ability to receive the extortion amount demanded").

4. *Inchoate Offense Reduction.* Nicolescu contends that the District Court erred in applying U.S.S.G. § 2B3.2 instead of U.S.S.G. § 2X1.1, under which, Nicolescu claims, he would have been

into separate units for sentencing purposes." Nicolescu now argues on appeal, for the first time, that the District Court had the authority to separate the extortions into two groups, but the District Court failed to make the requisite findings.

Under the exacting standard of plain error review, an appellate court may, in its discretion, correct an error not raised at trial only where the appellant demonstrates that "(1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings; and (4) the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *United States v. Marcus*, 130 S. Ct. 2159, 2164 (2010) (internal quotation marks omitted).

[3] Depending on the circumstance, Application Note 4 might have been inapplicable if the jury had rendered a special verdict enumerating each object of the conspiracy or the jury had convicted Nicolescu on substantive counts of extorting both Bass and Lethbridge.

entitled to a three-level reduction. Because Nicolescu's raises this issue for the first time on appeal, our review is again for plain error. Section 2X1.1 of the Guidelines applies to offenses of attempt, conspiracy, and solicitation, but only when such offenses are not "expressly covered by another guideline section." *Id.* § 2X1.1(c). Whether Hobbs Act extortion is covered by § 2B3.2 or § 2X1.1 is unclear; however, in the circumstances of this case, it makes no difference which Guideline section the District Court applied.

Under § 2X1.1, Nicolescu is not entitled to a reduction if the evidence shows that "the defendant or a co-conspirator completed all the acts the conspirators believed necessary on their part for the successful completion of the substantive offense." *Id.* § 2X1.1(b)(2). The relevant question to this inquiry "is whether the *conspiracy* ripened into a substantially completed offense or came close enough to fruition." *United States v. Reifler*, 446 F.3d 65, 105 (2d Cir. 2006) (internal quotation marks and alterations omitted). Had the victims turned over the money upon being injected with the "virus," the act of extortion would have been completed. Although the conspirators' criminal ends were thwarted because there was no ready access to Bass's fortune, "what matters under the Guidelines is [whether the defendant] and his co-conspirators were 'about to complete' the crime, not that they were 'about to succeed.'" *United States v. Medina*, 74 F.3d 413, 418 (2d Cir. 1996). Accordingly, even if the court should have applied § 2X1.1, this error would not have had an effect on the sentencing range.

5. *Bodily Injury.* Nicolescu's final argument on appeal is that the District Court erred in applying a two-level enhancement under U.S.S.G. § 2B3.2(4)(A) based on bodily injury to a victim of the crime. Application of the bodily injury enhancement "presents a predominantly factual issue, which [the Court of Appeals] review[s] for clear error." *United States v. Lin Guang*, 511 F.3d 110, 124 (2d Cir. 2007). "Bodily injury" is defined as "any significant injury . . . that is painful and obvious, or is of a type for which medical attention ordinarily would be sought." U.S.S.G. § 1B1.1, cmt. n.1(B). Upon review of the record, we conclude that the District Court had ample evidence before it to justify the bodily injury enhancement—most notably, the injections of a foreign substance into the victims' arms.

Accordingly, Nicolescu's challenge to the reasonableness of his sentence is without merit.

**CONCLUSION**

We have considered all of the arguments raised by Nicolescu on appeal and find them to be without merit. For the reasons stated above, we **AFFIRM** the District Court's August 17, 2012 judgment.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk