Peter PAESE, Petitioner,

v.

UNITED STATES of America, Respondent.

No. 95 Civ. 8933 (GLG).

United States District Court, S.D. New York.

May 16, 1996.

Petitioner Peter Paese, Pro Se.

Mary Jo White, United States Attorney, Southern District of New York, White Plains, NY by Kerry A. Lawrence, Assistant United States Attorney, for the U.S.

## MEMORANDUM DECISION

GOETTEL, District Judge.

Peter Paese ("Petitioner" or "Paese") in this 28 U.S.C. § 2255 petition seeks to have his conviction (by plea of guilty) set aside with respect to one count, to have his sentence reduced by five years, and other related relief.[1]

The government opposes the petition, arguing that it should be dismissed as an abuse of the Writ since the issues should have been raised earlier. The government also argues that, to the extent Petitioner is alleging ineffective assistance of counsel, there clearly was none. Finally, the government contends that there is no merit to the grounds asserted for setting aside the conviction count in question. The first two issues can be better understood by first discussing the third issue.

Petitioner was a member of a gang (which included a Lieutenant in the Orange County Sheriff's Department) which committed several bank robberies in Westchester County. When the fourth robbery was committed, the government, acting upon a tip from a confidential source, was waiting for the robbers and arrested the entire gang after they left the bank.

Although Petitioner was involved in all four robberies, he was indicted only on the last two. In March of 1993, he pled guilty as part of a plea agreement to two counts of armed bank robbery, two counts of conspiracy in connection with these robberies, and one count of aiding and abetting the use or carrying of a weapon during the last bank robbery. In both of the bank robberies to which he pled guilty, Petitioner drove his car, a Lincoln, while other cars were driven by other members of the gang. (Bank robbers often use more than one car so that they can switch cars and avoid detection while escap-

ing.) Although Petitioner attempts to minimize his role in these two robberies, he had, particularly in the last robbery, a much more important assignment.

At the first of the two robberies to which he pled guilty, the robbery of Barclays Bank in Eastchester, New York, on July 29, 1992, the seven robbers met first and then drove in two cars, one of which went to the bank. Paese and Thomas Corton, Jr. ("Corton") parked near the bank awaiting the others. Two of the robbers entered the bank, one stationing himself at the counter and producing a firearm. The other robber, carrying an attache case and displaying a gun, went to the manager's desk and told him that his attache case contained dynamite. He then handcuffed the case to the wrist of a teller and directed the bank manager and teller to give them money. Threats were made to the bank employees concerning their safety if they attempted to resist. The attache case handcuffed to the teller was partially opened to reveal three purple sticks and a transistor with wiring, and one of the robbers advised the bank employees that he had a remote control to operate the device. (The purported bomb was a fake, but it resembled real explosives.) The robbers compelled the bank employees to open the vault and then fled with almost $83,000. A third confederate drove the two to where Paese and Corton were located. The entire gang later shared the proceeds of the robbery, none of which was recovered.

The next robbery, at the Bank of New York in White Plains on December 23, 1992, followed somewhat the same pattern but with an important new role for Petitioner. After a joint meeting, the seven drove to the bank in three separate vehicles. Petitioner parked his 1989 Lincoln near the bank. He was accompanied by Corton. Petitioner then walked to a public telephone. One of the robbers went into the bank and approached the bank manager on the ruse of opening a business account. While they were talking, his telephone rang. Petitioner, the caller, inquired about the presence of the other

---

**1.** Petitioner's papers, obviously copied from some other prisoner's, contain a number of completely mistaken arguments such as purported errors in the Court's charge and the failure of his counsel to file an appeal, when in fact he had pled guilty and there was no trial.

robber across from the bank manager and then read the following message to him from a note he had in his possession:

MR. RICHIE PAY ATTENTION AND DON'T HANG UP. THE MAN SITTING AT YOUR DESK IS ARMED WITH 7 STICKS OF DYNAMITE AND A RE-MOTE CONTROL DETONATOR. WE HAVE ANOTHER EXPLOSIVE DE-VICE AT YOUR HOUSE ON 258 ROMB-OUTS AVENUE WAITING FOR YOUR WIFE, SON AND DAUGHTER. DO NOT HIT ANY ALARMS AS WE ARE MONITORING ALL SILENT ALARMS AND POLICE CALLS IN THE AREA. WE WILL NOT HESITATE TO KILL EVERYONE. ESCORT HIM TO THE VAULT AND GIVE HIM *ALL* THE MONEY. WE KNOW HOW THE SAFE OPERATES, THERE IS NO WAITING PERIOD. DO IT NOW OR EVERY-BODY AND YOUR FAMILY WILL DIE.

At the same time, the other robber passed the bank manager a note with his home address printed on it and told him that if he did not open the vault, he would kill him. Indeed, he put a gun to the bank manager's head. The vault could not be opened because it was on a time lock. Consequently, the robbers had to satisfy themselves with some $76,000 from the tellers' drawers.

All of the robbers were then apprehended, albeit two led the FBI on a high-speed chase throughout the area and one fled on foot and had to be chased. Petitioner and Corton were apprehended nearby and Corton was found to be in possession of a loaded 45 caliber handgun. The FBI found in Petitioner's possession a piece of paper with the message that he had read to the bank manager over the telephone. The paper also had the bank's telephone number written on it.

As noted above, Petitioner, through his counsel, negotiated a plea agreement in which he pled guilty to certain offenses in exchange for the government dropping other charges. Most pertinent was that, in addition to a Title 18, Section 924(c) gun charge as to the last robbery, there was a similar charge lodged with respect to the earlier robbery. Because of the manner in which the statute is drafted, it would have required, in addition to the mandatory minimum additional five years on one gun charge, an additional 20 years mandatory for the second gun charge. In allocuting to his guilt with respect to the gun charge on the last robbery, Petitioner at first hedged about his knowledge that his confederate was armed, saying first that he saw the gun after they were arrested. The Court specifically asked him, "[y]ou didn't know in advance that Mr. Corton was going to be armed?" Petitioner responded, "[h]e told me he had a gun, yes." The government indicated that it could also prove that Petitioner was aware that the robber who entered the bank and used his gun so viciously was armed. The Court later sentenced Petitioner to 70 months on the two bank robberies (which was 17 months less than the pre-sentence report recommended), to be followed by the mandatory consecutive five years on the gun count.

■ In his Memorandum of Law submitted in opposition to that of the government, Petitioner now argues that Corton did not tell him he was armed "until seconds before the arrest," *id.* at pg. 4, and that the total time period of his knowledge consisted of no more than two minutes before arrest. Petitioner also submits one-sentence affidavits prepared three years ago from Corton and another robber, who entered the bank and used the gun, that Petitioner "had no knowledge that I was in possession of a firearm on December 23, 1992 or any time in the commission of any crime." We give no credence to these affidavits. The statements were obviously designed to assist Petitioner without in any way hurting the affiants. Neither of them are honest or believable persons. More important, they cannot testify to knowledge in the mind of the Petitioner.

In his petition, Paese attempts to minimize his involvement in the last bank robbery, saying that he was not even at the scene of the crime. His role, however, was not minimal. The telephone call which he made from the nearby telephone booth in which he threatened to kill both the bank manager and the bank manager's family was a very serious crime for which he could have been separately indicted. In addition, the telephone call

was an essential part of the threats being made to obtain money from the bank.

■ That this petition has any merit whatsoever is due to the fact that there have been changes in the case law concerning gun charges since the time of the plea and sentence. The law at that time was to the effect that a defendant aids and abets a violation of section 924(c) if there is a planned crime of violence and he has knowledge that a firearm will be used, regardless of whether the defendant carried a gun or facilitated or encouraged the use of a firearm in relation to the underlying crime. *United States v. Medina,* 32 F.3d 40, 46 (2d Cir.1994). However, in the unusual circumstances of that case, the Second Circuit held that the evidence did not support a conviction for aiding and abetting the use or carrying of a firearm. The Court reasoned that Medina had devised the plan to rob his former employer but, since he feared he would be recognized if he were present during the crime, he recruited another person (Lopez) to carry out the plan. Lopez, in turn, recruited two more confederates. Before the day of the planned robbery, Lopez agreed to act as an informant and betrayed the plot to the police. On the day of the planned robbery, Medina gave a gun to Lopez but he promptly turned it over to the police. When Lopez took the other confederates to the site of the planned crime, they were armed with guns of their own, but Lopez was not. They were arrested outside the premises. Consequently, the Second Circuit noted that although Medina had furnished a gun, it was not used during the attempted robbery, his plan did not entail that the gun would be used, and he was not present during the attempted robbery. Therefore, the Court held that the evidence did not support Medina's conviction for aiding and abetting the use or carrying of a firearm, and it reversed his conviction on that count. Unlike *Medina,* here Paese was involved in the robberies which did on some occasions successfully go forward, always with brandished and threatening guns.

Another important decision is the recent Supreme Court opinion in *Bailey v. United States,* —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). That case consisted of two separate appeals that involved gun charges in connection with drug trafficking offenses, 18 U.S.C. § 924(c)(1). The first petitioner, Bailey, was stopped for a traffic infraction. A search of the passenger compartment revealed one round of ammunition and 30 grams of cocaine. After his arrest, the officers searched the trunk where they found a loaded 9 millimeter pistol. The second petitioner had sold drugs out of her home. After making controlled buys, the police executed a search warrant for the apartment where they found in a bedroom closet an unloaded 22 caliber Derringer as well as crack cocaine and money from one of the controlled buys. (An expert testified that drug dealers use guns to protect themselves from other dealers, the police and their own employees.) Justice O'Connor, writing for a unanimous court, stated that the issue was whether evidence of the proximity and accessibility of a firearm to drugs is alone sufficient to support a conviction for "use" of a firearm in relation to a drug trafficking offense. The Court determined that the word "use" must connote more than mere possession of a firearm since there would be no need for the other possible offense: "carry." The Court held that neither petitioner was guilty of using a weapon but noted:

> While it is undeniable that the active-employment reading of "use" restricts the scope of § 924(c)(1), the Government often has other means available to charge offenders who mix guns and drugs. The "carry" prong of § 924(c)(1), for example, brings some offenders who would not satisfy the "use" prong within the reach of the statute.

—— U.S. at ——, 116 S.Ct. at 509. The Court therefore remanded the case for consideration of whether either defendant could be guilty under the "carry" section.[2]

■ We will assume for these purposes that the *Bailey* decision has retroactive ef-

---

**2.** We do not see how Robinson, who merely had the gun in a locked trunk in her bedroom closet, could be considered to be carrying the weapon. Bailey, who had the weapon in the trunk of his

car, is a somewhat closer question since in a sense he was "carrying" the weapon in that he was responsible at the time of his arrest for moving it from place to place.

fect[3], as well as *Medina.* We also will assume that, although Petitioner pled guilty, he has not waived the right to challenge the factual basis for his plea. Although *United States v. Broce,* 488 U.S. 563, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989), held that a defendant is precluded from collaterally attacking a voluntary and intelligent guilty plea, an exception to the general rule occurs when the defendant had "the right not to be hailed into Court at all upon the felony charge." *Id.* at 574–75, 109 S.Ct. at 764–66 (quoting *Blackledge v. Perry,* 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974)). For this reason, we do not fault Petitioner for not filing this petition earlier, or for not having raised this issue at an earlier time. It would have been unsuccessful at any earlier point in time.[4] For the same reason, it is equally clear that his counsel was not ineffective. The state of the law as it then existed would have foreclosed any such argument. Indeed, if it had been made before there was a plea agreement, it would simply have resulted in Petitioner's facing all the charges on which he was indicted, as well as others that could have been filed, and the possibility of a jail sentence far longer than his life expectancy.

■ We are therefore left with the issue of whether *Bailey* and *Medina* invalidate the guilty plea. We should note that, were we to agree with Petitioner, it would not result, as he seems to think, in an immediate reduction of his sentence by five years. If the entire count is set aside, we would be required to recalculate the Guidelines for that bank robbery since, when a firearm is brandished, displayed or possessed, the base level for the offense is enhanced by five levels unless there is a separate gun charge.[5] Finally, the leniency which the Court exhibited with respect to the two bank robberies and two conspiracy convictions would not carry over with the mandatory consecutive five-year sentence no longer added on.

Returning to the underlying issue, Petitioner was indicted for conspiracy and aiding and abetting the use and the carrying of a firearm in connection with a violent crime—aggravated bank robbery. The Court accepted his plea, finding that Petitioner had aided and abetted his co-defendants' carrying and use of firearms. *See, e.g., United States v. Morrow,* 977 F.2d 222, 231 (6th Cir.1992) (*en banc*) (upholding conviction for aiding and abetting section 924(c) violation on ground that defendant knew his accomplice carried a firearm and did so to facilitate their joint drug trafficking efforts), *cert. denied,* 508 U.S. 975, 113 S.Ct. 2969, 125 L.Ed.2d 668 (1993).

The government argues that the facts are also sufficient to support the conclusion that Petitioner was jointly carrying the firearm with his co-conspirators, citing cases holding that a defendant "carries" a gun within the meaning of section 924(c) when he possesses it jointly with his co-defendants. *United States v. Joseph,* 892 F.2d 118, 125–26 (D.C.Cir.1989); *United States v. Cardenas,* 864 F.2d 1528, 1535–36 (10th Cir.), *cert. denied,* 491 U.S. 909, 109 S.Ct. 3197, 105 L.Ed.2d 705 (1989). *See also United States v. Speer,* 30 F.3d 605, 612 (5th Cir.1994) (affirming conviction for possessing firearm in violation of 18 U.S.C. § 922(g) on ground that defendant who drove car had constructive possession of passenger's firearm), *cert. denied,* —— U.S. ——, 115 S.Ct. 768, 130 L.Ed.2d 664 (1995); *United States v. Boykin,* 986 F.2d 270 (8th Cir.1993) (conviction for violating § 922(g) "may be based on constructive or joint possession of the firearm"), *cert. denied,* 510 U.S. 888, 114 S.Ct. 241, 126 L.Ed.2d 195 (1993).

The vitality of the above cited cases is put in question by the *Medina* decision and other recent rulings of the Second Circuit attempting to apply *Medina* retroactively. In *Unit-*

---

3. The only case from the Second Circuit on that issue is an unreported decision, which therefore cannot be cited, which applied *Bailey* retroactively. It has been so treated by other Courts. *See e.g. United States v. Abdul,* 75 F.3d 327 (7th Cir.1996).

4. We do note, however, that there is an unfortunate prejudice to the government in allowing this, in that the government gave up numerous

other charges that could have been filed against Petitioner, such as using the telephone wires to make death threats, which were dropped in exchange for his plea.

5. That happened on Medina's resentencing. *See United States v. Medina,* 74 F.3d 413 (2d Cir. 1996).

ed States v. Masotto, 73 F.3d 1233 (2d Cir. 1996), the defendant was convicted, *inter alia*, of a violation of 18 U.S.C. § 924(c). The trial court there charged the jury that the defendant could be convicted of that violation either as an aider and abettor or under a *Pinkerton* theory of liability. (*Pinkerton v. United States*, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946)). Masotto had not been personally involved in the highjackings and robberies which gave rise to his indictment, but was their master-mind and had knowledge that his confederates might use firearms. On appeal, he argued that the jury's aiding and abetting instruction allowed his conviction based on mere knowledge, in contravention of *Medina*. The Court of Appeals rejected that argument, finding that the general charge that the jury must find that "the defendant participated in commission" of the offenses, was sufficient to make the charge satisfactory under *Medina*. 73 F.3d at 1240. Before considering the aiding and abetting charge, however, the Court considered whether *Medina* was violated by a *Pinkerton* instruction, by which a co-conspirator can be held responsible for the substantive crimes of his co-conspirators if they were reasonably foreseeable consequences of acts furthering the conspiracy, even though the defendant did not participate in the substantive crimes. The Court held that *Medina* does not affect existing precedent that a *Pinkerton* instruction may be given as an alternative theory of liability under section 924(c), since *Medina* did not involve a *Pinkerton* instruction, but was limited to aiding and abetting. Masotto's conviction was therefore upheld.

Several months later, the Second Circuit decided *United States v. Giraldo*, 80 F.3d 667 (2d Cir.1996). *Giraldo* seems to have gone further than *Medina*, and further restricts a defendant's liability for the carrying of a gun by a co-conspirator under an aiding and abetting theory absent "proof that the defendant performed some affirmative act relating to that firearm." 80 F.3d at 676. *Giraldo* was a narcotics case in which the three defendants were arrested in a car. A later search of the car at police headquarters disclosed a fully loaded, ready-to-fire semi-automatic gun hidden under a change dish in the console. The defendants were indicted for both using and carrying under section 924(c)(1), and

were convicted. On appeal following the *Bailey* decision, the Court held that there was no "use" of the gun. As to the charge of "carrying," the Court found that, to be an aider and abetter, the defendant would have to have had knowledge that a gun would be used and would have to have performed some act that directly facilitated or encouraged the use or carrying of a firearm. The Court noted that some affirmative act relating to the firearm must have been performed. The Court then found that the passenger in the backseat did not have access to the gun, that there was no evidence that the front-seat passenger knew the gun was in the console, but that the evidence was sufficient with respect to the driver who was, at a minimum, the custodian of the car. As to the two defendants whose convictions were reversed, the Court specifically noted that no *Pinkerton* instruction had been given and that, therefore, its principles could not be applied to them. (The decision does not cite *Masotto, supra*, which in part upheld an aiding and abetting charge.)

A month after *Giraldo*, the Second Circuit decided *United States v. Pipola*, 83 F.3d 556 (2d Cir.1996). Pipola, like Masotto, was not an actual participant in the crimes (here robberies) but was their mastermind. Again, the argument was made that the aiding and abetting charge was error because it instructed the jury that the defendant could be found guilty simply because he knew that firearms would be used or carried during the robberies. On appeal the Court found that the jury instruction did not state the elements of aiding and abetting completely, but as a whole delivered a correct interpretation of the law. It held that the case was indistinguishable from *Masotto*, and that *Medina* simply requires that there be an act or omission promoting the use of a firearm. The decision in *Giraldo* was not cited. The Court noted that the defendant had discussed the robberies with the persons who carried them out, had assigned particular roles to various participants, and had told one of the co-defendants to provide another one with a gun. No mention is made of *Pinkerton* so we can conclude that there was no *Pinkerton* charge.

The most recent case on this issue in the Second Circuit was decided a week ago,

*United States v. Pimentel,* 83 F.3d 55 (2d Cir.1996). Pimentel worked for a drug organization which transported its drugs in an automobile having a compartment located on the back of the front passenger seat. The compartment could be opened by pressing a button on the car's dashboard and a button on the driver's side of the car. The compartment was used to secrete the drugs and also contained a gun that was used to protect the drugs and drug dealer. On the occasion in question when two drug transactions were consummated, there were three persons in the car. The driver caused the compartment to open and the back seat passenger removed drugs and put money in the compartment where the gun was stored. Pimentel was seated in the front passenger seat. He challenged that portion of his conviction that included a violation of 18 U.S.C. §§ 924(c) and 2, claiming that the evidence was insufficient to show that he used or carried the gun in the car because it was not accessible to him from the front passenger seat. After briefly discussing the *Giraldo* and *Bailey* cases, *supra,* the Court concluded that there was insufficient evidence to convict Pimentel of using or even carrying the gun. However, the Court of Appeals upheld the conviction on the *Pinkerton* theory of liability, holding that a co-conspirator who does not directly commit a substantive offense may be liable for that offense if it was committed by a co-conspirator in furtherance of the conspiracy and was a foreseeable consequence of the conspiratory agreement. The Court reasoned that the jury could properly find that the driver and the back seat passenger "carried" the gun and that the presence of the gun in the car was reasonably foreseeable to Pimentel. The Court further found that the jury was properly instructed on the *Pinkerton* theory of liability.

As can be seen from the above description of recent cases, the Second Circuit has been confronted with a number of appeals resulting from the change of law effected by *Medina* and *Bailey.* It seems to have stretched in some instances to uphold the propriety of aiding and abetting charges which were developed under the pre-*Medina/Bailey* standards. Moreover, it has resurrected the use of the *Pinkerton* doctrine in order to justify some convictions.

The recent cases applying the *Pinkerton* doctrine to section 924(c) have been cases in which the defendant stood trial. It was therefore necessary to evaluate the charge to the jury. In this case Petitioner pled guilty. Because he pled guilty, any legal theory which would support a finding that there was a factual basis for the plea is sufficient to uphold it. Paese knew that his companion in his car, Corton, was armed and carrying a weapon. Moreover, he knew that another co-conspirator who entered the bank was actually using a gun in connection with the robbery, and indeed had used one before in an earlier robbery. These circumstances are sufficient to uphold a conviction under the *Pinkerton* doctrine for both the use and carrying of a weapon.

We believe there was an adequate basis for Petitioner in the instant case to plead guilty to conspiracy and aiding and abetting the carrying and use of firearms during a crime of violence. Consequently, the petition is in all respects DENIED.

**SO ORDERED.**