**Jesus Perez PAULINO, Petitioner,**

**v.**

**UNITED STATES of America, Respondent.**

**No. 96 Civ. 4381 (KMW).**

United States District Court, S.D. New York.

April 30, 1997.

---

Jesus Perez Paulino, Ray Brook, NY, pro se.

John J. Rice, Assistant U.S. Attorney, New York City, for Defendant.

## ORDER

KIMBA M. WOOD, District Judge.

Petitioner, *pro see*, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2255, challenging his guilty plea to conspiracy to distribute and possess with intent to distribute cocaine, and possession of a firearm during the commission of a drug offense. In a Report and Recommendation (the "Report") dated January 27, 1997, Magistrate Judge Andrew J. Peck recommended that I deny petitioner's application.

In conformity with *Small v. Secretary of Health and Human Services,* 892 F.2d 15, 16 (2d Cir.1989), Magistrate Judge Peck explicitly cautioned that failure to file timely objections would constitute a waiver of those objections, specifically citing 28 U.S.C. § 636(b)(1) and Rules 72(b) and 6 of the Federal Rules of Civil Procedure. No objections to the Report have been received. I therefore accept and adopt Magistrate Judge Peck's recommendations as set out in the Report. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985) (failure to file timely objections constitutes waiver of objections, and district court review not required); *cf. Small,* 892 F.2d at 16 (*Arn* applies even to se litigants if report contains properly cautionary language).

Accordingly, I deny petitioner's application for a writ of habeas corpus. I therefore direct the Clerk of Court to close this case.

SO ORDERED.

## REPORT AND RECOMMENDATION

PECK, United States Magistrate Judge:

Petitioner Jesus Perez Paulino brings this petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2255, challenging his guilty plea to conspiracy to distribute and possess with intent to distribute cocaine, and possession of a firearm during the commission of a drug offense. Paulino alleges that he neither "used" nor "carried" a gun, and thus that the Supreme Court's decision in *Bailey v. United States,* —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), justifies issuance of the writ. Paulino, however, admitted in his plea allocution to carrying the gun. Paulino also alleges that there was insufficient proof as to the quantity of drugs involved, requiring resentencing under *United States v. Studley,* 47 F.3d 569 (2d Cir.1995). Paulino's claim fails because he admitted to the quantity of

drugs in his plea agreement and by agreeing to the Presentence Report.

For the reasons more fully explained below, I recommend that Paulino's habeas petition be denied.

## FACTS

### Paulino's Guilty Plea

On October 30, 1992, Paulino and the Government entered into a plea agreement pursuant to which Paulino agreed to plead guilty to counts 2 and 4 of the superseding indictment, *i.e.,* that Paulino conspired with others to distribute and possess with intent to distribute over five kilograms of cocaine, and that he used and carried a firearm during and in relation to a drug trafficking crime. (Gov't Br. Ex. A: Plea Agreement Letter at 1.) As part of the plea agreement, Paulino stipulated that "[a]t least 50 kilograms of cocaine were distributed by the conspiracy, resulting in a [Sentencing Guideline] base offense level of 36." (*Id.* at 2.)

Paulino entered his guilty plea before Judge Wood on January 11, 1993. (Gov't Br. Ex. B: 1/11/93 Plea Tr. at 2.) A Spanish interpreter translated the plea proceedings for Paulino. (*See id.* at 2.) Judge Wood first determined Paulino's competence to plead and that he understood the rights he was giving up by pleading guilty. (*Id.* at 2–6.) Paulino also confirmed that he was satisfied with his counsel's representation of him. (*Id.* at 4.) Judge Wood explained the Sentencing Guidelines and the sentencing process, and Paulino confirmed his understanding. (*Id.* at 8–10.) Judge Wood next carefully confirmed that the plea agreement letter had been read to him word for word by the interpreter and that Paulino understood the plea agreement letter. (*Id.* at 11.) Judge Wood also carefully explained to Paulino that his "sentence depends, in part, upon the amount of cocaine distributed by the conspiracy that you are alleged to have been a part of and that were distributed by the conspiracy." (*Id.* at 11–13.)

Paulino then allocuted to the charges, as follows:

THE COURT: Mr. Perez, did you, as charged in Count One of the indictment, from in or at least May 1989 to on or about March 31, 1992, in the Southern District of New York, along with others, unlawfully, intentionally, and knowingly agree with one another to violate the narcotics laws of the United States?

THE DEFENDANT: Yes.

THE COURT: In that connection, did you and these others possess with intent to distribute over five kilograms of cocaine?

THE DEFENDANT: Yes.

THE COURT: In that connection, on or about March 31, 1992, in an apartment at 505 West 187th Street, New York, New York, *did you hold a firearm?*

THE DEFENDANT: *If I had it?*

THE COURT: *Held a firearm.*

THE DEFENDANT: *Yes. I did.*

THE COURT: *Did you, as charged in Count Four of the indictment, on or about March 31, 1992, in the Southern District of New York, unlawfully, willfully, and knowingly use and carry a Sig–Sauer semi-automatic 9–millimeter pistol during and in relation to a drug trafficking crime, namely, the crime charged in Count One?*

THE DEFENDANT: The one that we had that day?

THE COURT: The one that you had March 31, 1992.

THE DEFENDANT: *Yes, I had that in March, yes. That was the weapon.*

THE COURT: *You were carrying it in connection with the drug trafficking crime charged in Count One?*

THE DEFENDANT: *Yes.*

THE COURT: At the time that you did these acts, did you know that they were wrong and that they were unlawful?

THE DEFENDANT: Yes.

(1/11/93 Plea Tr. at 16–17, emphasis added.)

In addition, the Government proffered evidence as to the crime including Paulino's carrying a gun, and Paulino agreed with the Government's recitation:

MR. COFFEY: ... The government would present the following evidence, or evidence to include the following. The testimony of several law enforcement officers

who conducted the search of three apartments at 505 West 187th Street on March 31st of last year. *One of those law enforcement officers viewed the defendant through the window while it was going on, holding a gun.*

The apartment in which the defendant was found was the apartment that customers would come to make their order. That evidence would be put in by the testimony *of two insiders from the organization,* including the bookkeeper who worked at that location, who was also arrested that day.

We would also present the drug records that were seized that day, some of which had the defendant's fingerprints on them, including pages that indicate the sale of approximately 35 kilos of cocaine in the weeks preceding the raid. There would also be assorted paraphernalia and other physical evidence, your Honor.

THE COURT: Thank you.

Mr. Perez, do you have any argument with what Mr. Coffey has just said?

THE DEFENDANT: No. That's fine.

THE COURT: How do you now plead to the charges, guilty or not guilty?

THE DEFENDANT: Guilty.

THE COURT: Are you pleading guilty because, in fact, you are guilty of the crimes charged?

THE DEFENDANT: Yes, I am guilty.

(1/11/93 Plea Tr. at 17–18, emphasis added.) Judge Wood accepted Paulino's guilty plea. (*Id.* at 18–19.)

### The Presentence Report

The Presentence Report stated that members of the Paulino family founded an organization referred to as "Los Chamos" in October 1988 to distribute cocaine in Washington Heights. (Gov't Br. Ex. C: Presentence Report ¶¶ 30–31.) Based on information from confidential informants, ATF agents obtained a search warrant for apartments on the first floor of 505 West 187th Street that were used

by Los Chamos as stash houses. (*Id.* ¶¶ 42–43.) ATF agents executed the warrant on March 31, 1992 and discovered firearms, cocaine and diluents, cash and drug records that showed a recent sale of 35 kilograms of cocaine in one deal. (*Id.* ¶ 44.) "As agents executed the warrant at apartment one of the building, an agent positioned outside the window to that apartment observed Jesus Perez Paulino holding a firearm. Upon entering and searching the apartment, agents seized a Sig–Sauer semiautomatic 9mm. pistol." (*Id.* ¶ 49.) Paulino's co-conspirators testified at the trial of another member of Los Chamos that Paulino "was in charge of the daily sales of cocaine to customers. . . . This testimony supports the stipulation that Perez–Paulino distributed in excess of 50 kilograms of cocaine while he was employed in the organization." (*id.* ¶ 50.) "Testimony adduced at trial [of another Los Chamos member] showed that Perez–Paulino carried a firearm during the course of the aforementioned drug transactions and that he was observed on occasion with additional firearms." (*Id.* ¶ 52.) [1]

At sentencing, Paulino's counsel represented to Judge Wood that "we are prepared to accept as accurate the findings of the presentence report." (Gov't Br. Ex. D: 5/3/94 Sentence Tr. at 23.)

### Sentencing and Appeal

Judge Wood sentenced Paulino to 188 months imprisonment on the conspiracy count (count 1) and a consecutive five-year (60 months) term on the firearm count (count 4). (*See* Paulino Br. at 4; Gov't Br. at 4.)

Judge Wood permitted Paulino to file a late notice of appeal on July 19, 1994. On November 28, 1994, Paulino's appellate counsel filed a motion and brief pursuant to *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), that there were no non-frivolous issues to be raised on appeal. That motion was granted. (Gov't Br. at 4; *see* Paulino Reply Br. at 3.)

---

1. The Presentence Report also disclosed that Paulino's statement that he had no criminal record was not true. In fact, he was convicted of a parallel offense, was an "absconder" from probation, and faced an active bench warrant. This moved Paulino into the next Criminal History Category under the Sentencing Guidelines and elevated his guideline sentence range. (*Id.* ¶¶ 58–62.)

*Paulino's Present Habeas Petition*

Paulino filed his pro se habeas petition, pursuant to 28 U.S.C. § 2255, in May 1996, raising two grounds. (*See* Petition I 12(A)-(B).) First, Paulino argues that the Supreme Court's recent decision as to the "use" of a firearm, *Bailey v. United States,* — U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), requires the Court to vacate his guilty plea to count 4 of the indictment. (Petition ¶ 12(A); Paulino Br. at 5–6; Paulino Reply Br. at 1–3; Paulino Affidavit, dated 11/7/96.) Second, Paulino argues that he should be re-sentenced on the conspiracy charge because no particularized finding was made as to the quantity of cocaine involved, relying on *United States v. Studley,* 47 F.3d 569 (2d Cir. 1995). (Petition ¶ 12(B); Paulino Br. at 7–11; Paulino Reply Br. at 3–4.)

## ANALYSIS

### I. PAULINO'S GUILTY PLEA TO COUNT 4 FOR USING OR CARRYING A FIREARM DURING A DRUG OFFENSE IS NOT AFFECTED BY THE SUPREME COURT'S BAILEY DECISION

Section 924(c)(1) provides for a five-year consecutive sentence for those who use or carry a firearm during a drug trafficking crime:

> Whoever, during and in relation to any crime of violence or drug trafficking crime ... *uses or carries a firearm,* shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years....

18 U.S.C. § 924(c)(1) (emphasis added).

In *Bailey v. United States,* — U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), the Supreme Court limited the interpretation of "use." The Supreme Court held that § 924(c)(1) "requires evidence sufficient to show an *active employment* of the firearm by the defendant, a use that makes the firearm an operative factor in relation to the predicate offense." *Bailey,* — U.S. at ——, 116 S.Ct. at 505. The Supreme Court held that " 'use' must connote more than mere possession of a firearm by a person who commits a

drug offense." *Id.* at ——, 116 S.Ct. at 506. The Supreme Court illustrated activities that fall within the statutory definition of "use":

> The active-employment understanding of "use" certainly includes brandishing, displaying, bartering, striking with, and most obviously, firing or attempting to fire, a firearm. We note that this reading compels the conclusion that even an offender's reference to a firearm in his possession could satisfy § 924(c)(1). Thus, a reference to a firearm calculated to bring about a change in the circumstances of the predicate offense is a "use," just as the silent but obvious and forceful presence of a gun on a table can be a "use." ... [However, a] defendant cannot be charged under § 924(c)(1) merely for storing a weapon near drugs or drug proceeds. Storage of a firearm, without its more active employment, is not reasonably distinguishable from possession.

*Bailey,* — U.S. at ——, 116 S.Ct. at 508.

The Supreme Court based its interpretation of "use," in part, on the fact that § 924(c) also prohibits carrying a firearm, and a broader reading of "use" could make the "carry" prong redundant. *Bailey,* — U.S. at —— – ——, 116 S.Ct. at 506–07. The Supreme Court explained:

> Here, Congress has specified two types of conduct with a firearm: "uses" or "carries." ... Nothing here indicates that Congress, when it provided these two terms, intended that they be understood to be redundant.
>
> We assume that Congress used' two terms because it intended each term to have a particular, nonsuperfluous meaning. While a broad reading of "use" undermines virtually any function for "carry," a more limited, active interpretation of "use" preserves a meaningful role for "carries" as an alternative basis for a charge. Under the interpretation we enunciate today, a fireman can be used without being carried, *e.g.,* when an offender has a gun on display during a transaction, or barters with a firearm without handling it; and a firearm can be carried without being used, *e.g.,*

when an offender keeps a gun hidden in his clothing throughout a drug transaction. *Id.* at ——, 116 S.Ct. at 507.

Finally, the Supreme Court noted that the Government often could use the "carry" prong of § 924(c) even where there was no active "use" of a firearm:

> While it is undeniable that the active-employment reading of "use" restricts the scope of § 924(c)(1), the Government often has other means available to charge offenders who mix guns and drugs. *The "carry" prong of § 924(c)(1), for example, brings some offenders who would not satisfy the "use" prong within the reach of the statute.*

*Bailey,* —— U.S. at ——, 116 S.Ct. at 509 (emphasis added).

Because Paulino's *Bailey* claim fails on the merits, the Court need not determine whether *Bailey* would apply on a habeas petition to someone, like Paulino, whose conviction became final before the *Bailey* decision. (The government has not raised that point.) *See Caspari v. Bohlen,* 510 U.S. 383, 389, 114 S.Ct. 948, 953, 127 L.Ed.2d 236 (1994) (*Teague* is not jurisdictional, and "[t]hus, a federal court may, but need not, decline to apply *Teague* if the State does not argue it."); *Ayala v. Speckard,* 102 F.3d 649, 651 (2d Cir.1996) (same); *Ciak v. United States,* 59 F.3d 296, 302 (2d Cir.1995) (government waived *Teague* argument by failure to raise it); *Gonzalez v. United States,* 96 Civ. 4171 & 92 Cr. 842, 1997 WL 33567 (S.D.N.Y. Jan. 29, 1997) (denies petitioner's *Bailey*-based § 2255 habeas petition without discussion of whether *Bailey* should apply on habeas to those convicted before *Bailey*); *Paese v. United States,* 927 F.Supp. 667, 670–71

(S.D.N.Y.1996) (assumes Bailey has retroactive effect and that "although Petitioner pled guilty, he has not waived the right to challenge the factual basis for his plea"); *see generally Teague v. Lane,* 489 U.S. 288, 305–10, 109 S.Ct. 1060, 1072–75, 103 L.Ed.2d 334 (1989) ("Unless they fall within an exception to the general rule, new constitutional rules of criminal procedure will not be applicable [on collateral habeas review] to those cases which have become final before the new rules are announced.").

■ *Bailey* does not affect Paulino's conviction. Paulino ignores *Bailey*'s clear distinction between "use" of a firearm and "carrying" a firearm, both of which are prohibited by 18 U.S.C. 924(c)(1) Paulino's guilty plea allocution provides sufficient proof that he carried a gun during and in relation to a drug trafficking crime. (1/11/97 Plea Tr. at 16–17, quoted at pages 3–4 above.) Paulino specifically testified that he held and carried a firearm during a drug offense. He allocuted:

> THE COURT: In that connection [*i.e.*, the drug offense], on or about March 31, 1992, did you hold a firearm?
>
> . . . .
>
> THE DEFENDANT: Yes, I did.... Yes, I had [a Sig Sauer semi-automatic 9mm. pistol] in March, yes. That was the weapon.
>
> THE COURT: You were carrying it in connection with the drug trafficking crime charged in Count One?
>
> THE DEFENDANT: Yes.

(1/11/93 Plea Tr. at 16–17.)[2] In addition to Paulino's own plea allocution statements, the government represented that an ATF agent observed Paulino in the drug "stash" apart-

---

**2.** In his reply pages, Paulino submitted an affidavit alleging that he did not carry a firearm but told the Court that he did because of advice from his then trial counsel. (Paulino 11/7/96 Aff., pp. 1–2.) Paulino does not, of course, supply a supporting affidavit from his former counsel. The Court must credit Paulino's sworn plea allocution over his self-serving habeas affidavit. *See, e.g., Gonzalez v. United States,* 96 Civ. 4709 & 90 Cr. 703, 1996 WL 684170 at *3 (S.D.N.Y. Nov. 25, 1996) ("statements made in a plea allocution 'carry a strong presumption of verity' "; "petitioner again attempts to bypass the clear and detailed representations he made under oath at

allocution, but again presents no reason to doubt the veracity of those statements," which clearly show he carried and/or used a gun); *United States v. Quinones,* 89 Cr. 291, 1996 WL 351290 at *3 (S.D.N.Y. June 26, 1996) (§ 2255 petition based on *Bailey* denied where petitioner, who had pled guilty, "has not submitted evidence demonstrating that the facts underlying his arrest do not support his conviction in light of Bailey."). Moreover, Paulino has not asserted an ineffective assistance of counsel claim, and the Court therefore will not analyze Paulino's "counsel made me say it" allegation under the law of ineffective assistance of counsel.

ment "holding a gun." (1/11/93 Plea Tr. at 17–18; Presentence Report ¶¶ 19–52; 5/3/94 Sentence Tr. at 23.)

Thus, Paulino's plea allocution, as well as the facts contained in the Presentence Report—that an ATF agent observed Paulino carrying a gun and co-conspirator testimony that Paulino carried a gun while engaged in drug trafficking—more than support Paulino's plea and conviction under 18 U.S.C. § 924(c) for "carrying" a firearm. Other post-*Bailey* decisions have denied habeas relief when the petitioner's plea allocution supported Conviction under *Bailey*'s "carry" prong. *E.g., Gonzalez v. United States*, 96 Civ. 4171 & 92 Cr. 842, 1997 WL 33567 at *1–4 (S.D.N.Y. Jan. 29, 1997) (denies § 2255 habeas petition brought based on *Bailey* where plea allocution and presentence report support "carry" prong of § 924(c)); *Ransom v. United States*, 96 Civ. 3437, 1996 WL 709628 at *3–4 (S.D.N.Y. Dec. 10, 1996); *Rivera v. United States*, 96 Civ. 5884 & 90 Cr. 703, 1996 WL 684222 at *2 (S.D.N.Y. Nov. 26, 1996); *Gonzalez v. United States*, 96 Civ. 4709 & 90 Cr. 703, 1996 WL 684170 at *3 (S.D.N.Y. Nov. 25, 1996); *Delgado v. United States*, 96 Civ. 7624, 1996 WL 631698 at *1 (S.D.N.Y. Oct. 31, 1996); *Santana v. United States*, 96 Civ. 4423 & 91 Cr. 195–01, 1996 WL 470706 at *1–2 (S.D.N.Y. Aug. 19, 1996); *Jones v. United States*, 96 Civ. 4707 & 92 Cr. 823, 1996 WL 452430 at *1 (S.D.N.Y. Aug. 9, 1996); *Paese v. United States*, 927 F.Supp. 667, 669, 673 (S.D.N.Y.1996).[3]

*Bailey* does not require or justify overturning Paulino's guilty plea to violating 18 U.S.C. § 924(c)—His guilty plea allocution and the information in the Presentence Report support a conviction under the "carry" a firearm prong of § 924(c). Therefore, I recommend that the Court deny Paulino's first habeas ground.

## II. *PAULINO ADMITTED TO 50 KILOGRAMS OF COCAINE, SO THE SECOND CIRCUIT'S STUDLEY DECISION DOES NOT AFFECT HIS SENTENCE*

In *United States v. Studley*, 47 F.3d 569 (2d Cir.1995), the Second Circuit held:

We have previously held that in order for a district court to sentence a defendant on the basis of criminal activity conducted by a coconspirator, a district court must make a particularized finding as to whether the activity was foreseeable to the defendant. We now find that the Guidelines also require the district court to make a particularized finding of the scope of the criminal activity agreed upon by the defendant.

*Studley*, 47 F.3d at 574 (citation omitted) Paulino claims that Judge Wood failed to make such a particularized finding as to the amount of drugs for which Paulino should be held responsible. (Petition ¶ 12(B); Paulino Br. at 7–11.) Paulino's habeas petition attacks the "uncorroborated" contents of the Presentence Report, which he claims he did not understand. (Paulino Br. at 10–11.)

▆▆▆ Assuming without deciding that Paulino is entitled to raise this claim on his

---

**3.** For cases denying § 2255 petitions based on *Bailey* because the Court found the evidence at trial sufficient to uphold a conviction for carrying a firearm, *see, e.g., United States v. Vasquez*, 85 F.3d 59, 60 (2d Cir.1996) ("We have ruled that where a section 924(c) conviction is challenged for insufficiency of the evidence, the sufficiency of the evidence to support conviction on the 'carrying' prong of the statute may be relied upon to sustain the conviction, notwithstanding the insufficiency of the evidence to support a conviction on the 'use' prong, as narrowed by *Bailey*."); *United States v. Pimentel*, 83 F.3d 55, 58–60 (2d Cir.1996) (jury charge on "use" was harmless error where charge properly described "carry" prong and sufficient evidence as to carry prong); *United States v. Giraldo*, 80 F.3d 667, 678 (2d Cir.) ("Since the defendants were charged with both using and carrying the gun in violation

of § 924(c), and the court's description of the 'use' prong would have been correct with respect to the 'carry' prong, ... we have no doubt that the court's erroneous instruction on I use I was harmless."), *cert. denied*, —— U.S. ——, 117 S.Ct. 135, 136 L.Ed.2d 83 (1996); *Medina v. United States*, 96 Civ. 3421, 1997 WL 45522 at *2–3 (S.D.N.Y. Feb. 4, 1997); *Araujo v. United States*, 945 F.Supp. 64, 65–69 (S.D.N.Y.1996); *United States v. Munoz*, 93 Cr. 900, 1996 WL 535543 at *2 (S.D.N.Y. Sept. 20, 1996); *United States v. Williams*, 92 Cr. 1115, 1996 WL 447774 at *4–6 (S.D.N.Y. Aug. 8, 1996); *Contreras v. United States*, 96 Civ. 1061 & 92 Cr. 96, 1996 WL 350663 at *1 (S.D.N.Y. June 26, 1996); *Bravo v. United States*, 96 Civ. 2712 & 88 Cr. 789, 1996 WL 267949 at *1 (S.D.N.Y. May 20, 1996); *United States v. Canady*, 920 F.Supp. 402, 405–08 (W.D.N.Y.1996).

habeas petition although he did not raise it on direct appeal (see Gov't Br. at 8–9), this claim lacks merit. Paulino's plea agreement stipulated to the fact in issue—that "[a]t least 50 kilograms of cocaine were distributed by the conspiracy, resulting in a [Sentencing Guideline] base offense level of 36." (Gov't Br. Ex. A: Plea Agreement Letter at 2.) Paulino cannot claim that he did not understand his plea agreement, because Judge Wood verified that the interpreter read the plea agreement letter to Paulino and that he understood the plea agreement letter. (1/11/93 Plea Tr. at 11.) Indeed, Judge Wood also explained to Paulino that his sentence would partly depend on the amount of cocaine distributed by the conspiracy and reminded Paulino of the 50 kilogram stipulation in the plea letter. (*Id.* at 11–13.) Finally, the Presentence Report not only reiterated the 50 kilogram stipulation but included additional facts concerning Paulino's management role in the conspiracy. (Presentence Report ¶ 50.) Paulino's counsel "accept[ed] as accurate the findings of the Presentence Report." (5/3/94 Sentence Tr. at 23.) Paulino's unsubstantiated assertion that he never understood the contents of the presentence report (Paulino Br. at 10) is insufficient to justify habeas relief. *See, e.g., Blackledge v. Allison,* 431 U.S. 63, 74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977) ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupposed by specifics is subject to summary dismissal."); *United States v. Gomez,* 103 F.3d 249, 254 (2d Cir. 1997) (defendant failed to object to presentence report; district judge could rely on plea allocution as to drug amount and defendant's role in the conspiracy); *United States v. Thompson,* 76 F.3d 442, 456 (2d Cir.1996) (sentencing judge satisfies fact finding as to amount of drugs by adopting recommendations of the presentence report); *Familia–Garcia v. United States,* 95 Civ. 6284 & 89 Cr. 398, 1996 WL 706938 at *1–2 (S.D.N.Y. Dec. 9, 1996) (failure to challenge presentence report at time of sentence or on direct appeal waives sentencing challenge for habeas); *Sanchez v. United States,* 95 Civ. 1077 & 91 Cr. 49, 1996 WL 507316 (S.D.N.Y. Sept. 6, 1996) (no ineffective assistance of counsel claim where defendant stipulated to quantity of drugs involved and base offense level); *Aluear–Rodriguez v. United States,* 95 Civ. 2381, 1996 WL 67939 at *1 (S.D.N.Y. Feb. 15, 1996) ("A prisoner is not entitled to have her sentence vacated on the theory that she did not understand the proceedings if the record shows that an interpreter was present and that she testified that she understood" the plea agreement); *Pena v. United States,* 95 Civ. 7795 & 90 Cr. 379, 1996 WL 26638 at *2 (S.D.N.Y. Jan. 24, 1996) ("statements at a plea allocution carry a strong presumption of verity, ... and are conclusive absent credible reason justifying departure from their apparent truth") (quotations omitted); *Carpenter v. United States,* 894 F.Supp. 95, 98–99 (E.D.N.Y.1995) (where the petitioner did not contest presentence report's accuracy on appeal, he cannot point to errors in presentence report as ground for collateral attack unless he shows cause for his failure to appeal and actual prejudice therefrom).

The Court thus had sufficient evidentiary basis for the 50 kilogram amount and the Sentencing Guideline level derived therefrom. Indeed, the cases hold that the plea agreement stipulation itself is sufficient. *See, e.g., Goss v. United States,* 96 Civ. 4427 & 93 Cr. 896, 1997 WL 7674 at *3 (S.D.N.Y. Jan. 9, 1997); *Gurses v. United States,* 96 Civ. 4729 & 94 Cr. 411, 1996 WL 487954 at *3 (S.D.N.Y. Aug. 27, 1996); *Reyes v. United States,* 96 Civ. 2095, 1996 WL 455013 at *2 (S.D.N.Y. Aug. 12, 1996) (sentence based on plea agreement stipulation as to drug quantity upheld); *Montalvo v. United States,* 95 Civ. 9442, 1996 WL 306376 at *5 (S.D.N.Y. June 7, 1996) (sentence upheld over *Studley* challenge where defendant "admitted both in the written Plea Agreement and in his allocution" to amount of drugs and his role in the conspiracy, and stipulated to Guidelines calculation); *Ortega v. United States,* 897 F.Supp. 771, 782 (S.D.N.Y.1995) (stipulation in plea agreement sufficient to support sentence).

## CONCLUSION

For the reasons set forth above, I recommend that the Court deny Paulino's § 2255 habeas corpus petition.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from receipt of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Kimba M. Wood, 500 Pearl Street, Room 1610, and to the chambers of the undersigned, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge Wood. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993), *cert. denied,* 513 U.S. 822, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994); *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.), *cert. denied,* 506 U.S. 1038, 113 S.Ct. 825, 121 L.Ed.2d 696 (1992); *Small v. Secretary of Health & Human Services,* 892 F.2d 15, 16 (2d Cir.1989); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 57–59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237–38 (2d Cir.1983); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

DATED: New York City

: March 21, 1997