UNITED STATES of America, Appellee,

v.

Roberto MEDINA, Defendant–Appellant.

No. 939, Docket 93–1541.

United States Court of Appeals, Second Circuit.

Argued March 10, 1994.

Decided Aug. 10, 1994.

Sanford M. Katz, New York City, for defendant-appellant.

Lorin L. Reisner, Asst. U.S. Atty., New York City (Mary Jo White, U.S. Atty., New York City, Nelson W. Cunningham, Asst. U.S. Atty., of counsel), for Appellee.

Before: WALKER, JACOBS, Circuit Judges, and ZAMPANO,* District Judge.

JACOBS, Circuit Judge:

Defendant–Appellant Roberto Medina devised a plan to rob his former employer, but feared he would be recognized by co-workers if he was present during the crime. Medina therefore recruited Jose Lopez to carry out the plan, and Lopez in turn recruited two other confederates. Before the date of the planned robbery, Lopez agreed to act as an informant and betrayed Medina's plot to the police. Count One of the indictment charged Medina and Lopez's recruits with attempted robbery and conspiracy to commit robbery, in violation of 18 U.S.C. § 1951; and aiding and abetting robbery, in violation of 18 U.S.C. § 2. Count Two charged them with using and carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c); and aiding and abetting that offense, in violation of 18 U.S.C. § 2. After a jury trial in the Southern District of New York (Mukasey, J.), Medina was convicted and sentenced, *inter alia*, to a 46 month prison term on Count One and a consecutive 60 month prison term on Count Two.

On appeal, Medina argues that his conviction on Count One must be reversed because (a) the evidence is insufficient to establish either that Medina conspired with Lopez before he became a government informant or that Medina conspired with anyone other than Lopez; and (b) the court erroneously instructed the jury that Medina could aid and abet the other confederates using Lopez as an intermediary even though Lopez was acting as an informant. Medina argues that his conviction on Count Two must be reversed because (a) the evidence was insufficient to establish that he aided and abetted the use or carrying of a firearm in relation to the robbery; and (b) the court's charge erroneously permitted the jury to convict Medina merely on a finding that he knew a gun would be used during the crime. We affirm his conviction on Count One. We reverse as to Count Two, however, because we agree with Medina that the evidence was insufficient to convict him of aiding and abetting the firearms violation. The critical circumstances supporting reversal are as follows. Medina performed no act that specifically aided and abetted the use or carrying of a gun during the attempted robbery. Medina was involved only in the planning stage of the robbery, and his plans did not entail a gun that was actually used or carried during the attempted robbery. Although his coconspirators did carry guns during the attempted robbery, Medina did not aid and abet them in that respect, nor was he present during the attempted robbery when the guns were carried or used.

## BACKGROUND

Roberto Medina was employed by the Foundation Construction Company for a brief period ending in October 1992. During his employment, he learned that in late December the company would have between $17,000 and $30,000 on its premises (apparently, the company's payroll and Christmas bonus money). Medina decided to rob the company, and revealed his plan to Jose Lopez early in December. Medina and Lopez discussed the robbery at least three times over the next several days. Eventually, on or about December 11, Medina asked if Lopez was willing to perform the actual robbery—explaining that he could not do it himself, since a former employee would probably be recognized. Lopez agreed to carry out the robbery, and enlisted the assistance of two other men, Louie Villanueva and Daniel Delgado.

---

* Honorable Robert C. Zampano, United States District Judge for the District of Connecticut, sitting by designation. Judge Zampano retired shortly after oral argument was heard in this case. Accordingly, the appeal was decided by the remaining panel members pursuant to Section 0.14 of the Local Rules of the Second Circuit.

On December 15, however, Lopez was arrested for carjacking and a related firearms violation. Lopez confessed the carjacking to detectives, and then went on to disclose Medina's plan to rob the construction company. The detectives persuaded him to act as a confidential informant and to permit them to monitor and record his conversations with his coconspirators.

Following the instructions of detectives, Lopez telephoned Villanueva the next day and reviewed the robbery plans; Villanueva confirmed that he and Delgado were ready to commit the robbery. Lopez then met Medina at a Brooklyn candy store, where they discussed the robbery. Medina told Lopez to call him later that night. After leaving the candy store, Lopez met Villanueva and Delgado at a bodega several blocks away, briefed them on his conversation with Medina, and discussed details of the robbery.

That evening, Lopez telephoned Medina as planned. Medina told him that the robbery should take place between 4:00 and 4:30 p.m. on the following Tuesday, December 22. While Medina was advising him on other aspects of the robbery, Lopez mentioned that Villanueva was going to help commit the crime. Medina, generalizing that, "yeah, two heads are better than one," approved of the additional participant. Medina discussed Villanueva's role in the robbery and share of the loot, referring to robberies at one point as "stickups."

On December 21, 1992, Lopez drove with Villanueva and Delgado to the construction company's office, making final arrangements for the next day's robbery. In separate telephone conversations that night with Villanueva and Medina, Lopez once again confirmed the details of the robbery plan.

On the day the robbery was to occur, December 22, 1992, Lopez spoke with Medina twice by telephone. In the morning, Medina expressed concern that Lopez might try to cheat him out of his share of the robbery proceeds, and requested that Lopez bring the loot to him directly after the crime was completed. He then told Lopez exactly where the money would be kept on the company's premises. Medina paged Lopez's beeper later that afternoon, and asked

whether Lopez had a gun. Lopez answered that Villanueva had a gun. Medina then offered to provide a second gun, and arranged to deliver it to Lopez at the Brooklyn candy store. When they met a short time later, Medina handed Lopez an unusual .31 caliber revolver, and instructed Lopez on how to use it. After this meeting, Lopez gave the gun to a detective who had been conducting surveillance near the candy store.

At about 3:30 that afternoon, Villanueva and Delgado arrived at the construction company. They were arrested as they approached the front door. Both Villanueva and Delgado carried semi-automatic pistols; neither carried the weapon that Medina had given Lopez. Medina was arrested a short time later.

## DISCUSSION

### A. Conspiracy to Commit a Robbery

Medina argues that the evidence at trial was insufficient to convict him of conspiring to rob the construction company. We disagree and begin by noting the heavy burden a defendant must carry when challenging the sufficiency of the evidence. See e.g., United States v. Alkins, 925 F.2d 541, 555 (2d Cir. 1991). In reviewing Medina's conviction, we must consider the evidence in the light most favorable to the government, see United States v. Torres, 901 F.2d 205, 216 (2d Cir.), cert. denied, 498 U.S. 906, 111 S.Ct. 273, 112 L.Ed.2d 229 (1990), drawing all reasonable inferences and resolving all issues of credibility in its favor, see Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); United States v. Chang An–Lo, 851 F.2d 547, 554 (2d Cir.), cert. denied, 488 U.S. 966, 109 S.Ct. 493, 102 L.Ed.2d 530 (1988).

█ Medina's primary attack on his conspiracy conviction is that he could not have conspired with Lopez as a matter of law, because Lopez was already acting as a government informant when he agreed to commit the robbery for Medina. Lopez testified that he agreed to participate in Medina's robbery plan on either December 11 or December 13. The government contends that

Lopez did not become an informant until December 15. Medina argues, however, that Lopez was acting as an informant by December 11, and that the evidence conclusively demonstrates this. He directs our attention to the fact that Lopez was initially arrested for the carjacking on November 17, 1992, and released the same day after exchanging beeper numbers with one of the detectives who had arrested him. Lopez and the detective contacted one another using the beeper numbers prior to December 15. Although the police obviously knew where Lopez could be found and had obtained an arrest warrant on November 25, they made no attempt to arrest him until December 15. The government, for its part, cites trial testimony explaining that Lopez was released after his initial arrest because the carjacking victim failed to identify him in a line-up; that Lopez's telephone conversations with detectives between November 17 and December 15 concerned other participants in the carjacking; and that Lopez's arrest on December 15 was based on information provided by an accomplice.

Medina claims that the evidence can support but one possible inference: that Lopez was acting as an informant by December 11. There is evidence, however, to support the view that Lopez's conversations with detectives prior to December 15 concerned the carjacking, and that he was not acting as an informant until after that date. Drawing all inferences and resolving all credibility issues in favor of the government, we cannot say that such a jury determination would be irrational, and therefore will not disturb it.

 The evidence is also sufficient to support a finding that Medina conspired with Villanueva. When Lopez told Medina that he had brought Villanueva into the scheme, Medina expressly approved the participation of the new coconspirator, on the principle that "two heads are better than one." Medina also learned from Lopez that Villanueva would be carrying a gun to the robbery and, with this knowledge, offered to supply Lopez with a second gun. It does not matter that Medina was unaware of Villanueva's full identity, or that they had never met. *See Rogers v. United States,* 340 U.S. 367, 375, 71

S.Ct. 438, 443, 95 L.Ed. 344 (1951) ("one person can be convicted of conspiring with persons whose names are unknown"). All that is required to sustain Medina's conviction for conspiracy is " 'some evidence from which it can reasonably be inferred that the person charged with conspiracy knew of the existence of the scheme alleged in the indictment and knowingly joined and participated in it.' " *United States v. Sanchez Solis* 882 F.2d 693, 696 (2d Cir.1989) (quoting *United States v. Gaviria,* 740 F.2d 174, 183 (2d Cir.1984)). Evidence that Medina knew of the robbery conspiracy and "knowingly joined and participated in it" is overwhelming. Indeed, Medina thought of the crime and set it in motion.

 Nor was there any error in the district court's jury instruction that Medina could conspire with Villanueva or Delgado through Lopez as an intermediary, even if Lopez was acting as an informant. "Although a person acting as an agent of the government cannot be a coconspirator, the presence of a government agent does not destroy a conspiracy in which at least two other private individuals have agreed to engage in an unlawful venture." *United States v. Miranda–Ortiz,* 926 F.2d 172, 175 (2d Cir.) (citations and internal quotation marks omitted), *cert. denied,* —— U.S. ——, 112 S.Ct. 347, 116 L.Ed.2d 287 (1991). A defendant can conspire with individuals he has never met, so long as he participates and is aware of their assistance in the criminal venture. *Rogers,* 340 U.S. at 375, 71 S.Ct. at 443. The evidence is sufficient to show an agreement between Medina and Villanueva to rob the construction company, because Medina continued to provide information and advice regarding the proposed robbery after he learned of Villanueva's participation on December 15. Even if Medina and Villanueva communicated solely through Lopez, and Lopez was acting as an informant, Medina and Villanueva could nevertheless be coconspirators: "[A] government agent may serve as a 'link' between 'genuine' conspirators." *United States v. Fincher,* 723 F.2d 862, 863 (11th Cir.1984) (citing *Sears v. United States,* 343 F.2d 139, 142 (5th Cir.1965)). The fact that conspirators select an informer as a conduit

for transmitting information is a business risk; it does not neutralize the conspiracy or insulate the conspirators from prosecution, *see United States v. Cordero,* 668 F.2d 32, 43 (1st Cir.1981) (Breyer, *J.*). Medina's conviction on Count One is affirmed.

## B. *Aiding and Abetting the Use or Carrying of a Firearm*

Medina contends that the evidence was insufficient to convict him of aiding and abetting a violation of 18 U.S.C. § 924(c)(1), which reads in relevant part:

> Whoever, during and in relation to any crime of violence ... for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence ..., be sentenced to imprisonment for five years....

Attempted robbery is included in the statutory definition of "violent felony." 18 U.S.C. § 924(e)(2)(B)(i).

Any person who "aids, abets, counsels, commands, induces or procures [the] commission" of a crime is punishable as a principal under 18 U.S.C. § 2(a). In order to sustain a conviction for aiding and abetting, we must find that "the defendant joined the specific venture and shared in it, and that his efforts contributed to its success." *United States v. Labat,* 905 F.2d 18, 23 (2d Cir.1990); *see also Nye & Nissen v. United States,* 336 U.S. 613, 619, 69 S.Ct. 766, 769, 93 L.Ed. 919 (1949); *United States v. Peoni,* 100 F.2d 401, 402 (2d Cir.1938).

▉ The evidence adduced by the government to support the conviction is as follows: (a) Medina once referred to robberies as "stickups"; (b) Medina offered a gun to Lopez and was told that Villanueva was already planning to carry a gun; and (c) Medina later supplied Lopez with a .31 caliber revolver. Although the government is correct that this evidence demonstrates that Medina continued to participate in the overall enterprise after he learned that Villanueva intended to carry a gun, we do not agree that such evidence is enough to support his conviction for aiding and abetting under § 924(c), and

therefore reverse his conviction on Count Two.

Under the law of this Circuit, Medina cannot be convicted as an aider and abettor unless he "consciously assisted the commission of the specific crime in some active way." *United States v. Dickerson,* 508 F.2d 1216, 1218 (2d Cir.1975). Count Two of the indictment charged Villanueva and Delgado with using or carrying a firearm during and in relation to a crime of violence. This specific crime—not the robbery—is the crime that Medina was charged with aiding and abetting, and it is this specific crime that Medina must have consciously and affirmatively assisted if his conviction on that charge is to be upheld. Contrary to the government's contention, Medina cannot be convicted as an aider and abettor under § 924(c) merely because he knew that a firearm would be used or carried and, with that knowledge, performed an act to facilitate or encourage the robbery itself. Rather, the language of the statute requires proof that he performed some act that directly facilitated or encouraged the use or carrying of a firearm.

Review of Medina's conduct discloses no basis for conviction under § 924(c). The gun Medina gave to Lopez was not carried or used by anyone during the attempted robbery and, therefore, Medina's efforts to aid and abet the carrying of that gun cannot support a § 924(c) conviction. Villanueva and Delgado each carried a semi-automatic weapon to the attempted robbery, but there is no evidence that Medina acted in any way to facilitate or encourage the use or carrying of those weapons. The government directs our attention to a telephone conversation between Medina and Lopez on the afternoon of the robbery attempt. When Medina asked if Lopez had a gun, Lopez replied that Villanueva already intended to carry a gun during the robbery. Medina then offered to provide an additional gun, and eventually delivered a revolver to Lopez. But Lopez did not carry a gun in the attempted robbery. Although Medina learned that Villanueva intended to carry a gun, the evidence does not indicate that Medina in any way prompted or induced him to do so. By the time Medina learned that a firearm would be carried by Villanueva

(just two or three hours before the scheduled robbery), Villanueva had already independently determined to carry a firearm. Since the use of that firearm was a foregone conclusion, and since there is no evidence that Villanueva was told of Medina's offer to supply a gun, Medina could not have counseled or encouraged Villanueva to carry or use it. The government does not undertake to prove that Medina aided or abetted Delgado's carrying of a firearm during the attempted robbery.

There is no evidence that Medina warned his coconspirators that the intended victims would be armed, or that he counseled the brandishing of a firearm. Had Medina been present at the attempted robbery, we would consider whether his conduct at the scene facilitated or promoted the carrying of a gun, or whether he benefitted from the gun's use so that he could be said to constructively possess the weapon, see, e.g., United States v. Torres–Maldonado, 14 F.3d 95, 101–03 (1st Cir.1994); but he was not there. In short, there is insufficient evidence to convict Medina of aiding and abetting his coconspirators to violate § 924(c).

■ The government argues that cases in several circuits support its view that a defendant aids and abets a violation of § 924(c) by planning a crime of violence with the knowledge that a firearm will be used, regardless of whether the defendant committed any act to facilitate or encourage the use of a firearm in relation to the underlying crime. See, e.g., Torres–Maldonado, 14 F.3d at 103; United States v. Thomas, 987 F.2d 697, 701–02 (11th Cir.1993); United States v. Williams, 985 F.2d 749, 756 (5th Cir.), cert. denied, — U.S. —, 114 S.Ct. 148, 126 L.Ed.2d 110 (1993); United States v. Gunning, 984 F.2d 1476, 1483 (7th Cir.1993); United States v. Morrow, 977 F.2d 222, 231 (6th Cir.1992) (en banc), cert. denied, — U.S. —, 113 S.Ct. 2969, 125 L.Ed.2d 668 (1993); United States v. Powell, 929 F.2d 724, 726–28 (D.C.Cir. 1991). However, none of these cases address (other than in dicta) the issue of statutory construction that we must decide: whether knowledge of a gun coupled with an act to aid and abet the robbery will support a conviction under § 924(c). In all but two of these

cases, a defendant's § 924(c) conviction was overturned on the ground that the defendant had no knowledge that a coconspirator was carrying a gun. See Torres–Maldonado, 14 F.3d at 103; Thomas, 987 F.2d at 702; Williams, 985 F.2d at 756; Powell, 929 F.2d at 728. These cases do not support a corollary proposition, however, that such knowledge alone would be enough to convict. Although the conviction was upheld in Gunning, the evidence showed that the defendant actually directed his confederate to carry the gun used in the underlying offense—an act that easily supports aider and abettor liability with respect to § 924(c). Gunning, 984 F.2d at 1483. We agree with these cases to the extent that they hold that a defendant cannot aid and abet a § 924(c) violation without knowing (or having reason to know) that a gun will be used or carried in relation to the underlying crime. However, to the extent that these cases imply that a defendant can aid and abet the use or carrying of a firearm without performing some affirmative act relating to that firearm, we disagree.

In Morrow, every judge of the Sixth Circuit sitting en banc started from the proposition (as expressed by the majority) that aider and abettor liability under § 924(c) requires a showing "that the defendant both associated and participated in the use of the firearm in connection with the underlying crime" (emphasis added). 977 F.2d at 231. The Morrow majority concluded that the defendant's knowledge of the gun, combined with "the act of wearing a ski mask," was sufficient evidence of participation in the use of the firearm to uphold the conviction. Id. The five dissenting judges, however, argued that the record was "devoid of any proof whatsoever of an affirmative act by Morrow in furtherance of [his confederate's] carrying of a weapon." Id. at 233. We share the common ground in Morrow, and have no reason to consider the ski mask issue that divided the Sixth Circuit.

We note that this Circuit has sustained convictions for aiding and abetting an armed bank robbery under 18 U.S.C. § 2113(d) without requiring proof of an act specifically

related to a firearm.[1] *See United States v. James*, 998 F.2d 74, 81–82 (2d Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 415, 126 L.Ed.2d 362 (1993); *United States v. Grubczak*, 793 F.2d 458, 462–63 & n. 1 (2d Cir.1986). However, neither *James* (which was concerned with whether a defendant could aid and abet an armed robbery when his participation was limited to the escape) nor *Grubczak* (which was concerned with the level of the defendant's knowledge with respect to the presence of firearms) focused on whether the act that supports aider and abettor liability under § 2113(d) must relate to a weapon used in the bank robbery. In *Grubczak*, we wrote:

> Although our court never has been squarely presented with this precise question, dictum in *United States v. Wardy*, 777 F.2d 101, 106 (2d Cir.1985), *cert. denied*, 475 U.S. 1053, 106 S.Ct. 1280, 89 L.Ed.2d 587 (1986), suggests acceptance of the prevailing view that in a prosecution for aiding and abetting armed bank robbery, the government must establish not only that the defendant knew that a bank was to be robbed and became associated and participated in that crime, but also that the defendant " 'knew that [the principal] was armed and intended to use the weapon, *and intended to aid him in that respect.*' "

793 F.2d at 462 n. 1 (emphasis added and some citations omitted). This language suggests that the act supporting aider and abettor liability under § 2113(d) must relate to the use of the weapon. However, in *James*, we quoted the foregoing passage from *Grubczak*, and went on to hold that, because the defendant aided and abetted the principal in committing the bank robbery, knowing that the principal had a gun, he "aided and abetted an armed, not a simple, robbery." 998 F.2d at 81–82. We are not presented with the question of whether aider and abettor liability under § 2113(d) may be established absent an act relating to a weapon used during the bank robbery. To the extent that *James* suggests an affirmative answer to that question, however, we do not think that *James* compels a similar resolution of the issue presented here under § 924(c).

■ Although § 2113(d) is analogous to § 924(c) insofar as it imposes a mandatory sentence enhancement when the underlying crime is committed with a weapon, the language of § 924(c) is different. Section 924(c) reaches "[w]hoever, during and in relation to a crime of violence …, uses or carries a firearm." Section 2113(d) punishes "[w]hoever, in committing, or in attempting to commit, [a bank robbery], … puts in jeopardy the life of any person by the use of a dangerous weapon or device." Under § 2113(d), each person who commits or attempts to commit a bank robbery with knowledge that a dangerous weapon or device may be used places other people in jeopardy by the use of that weapon or device, if only because (on the principle of division of labor) the tasks done by an unarmed criminal frees another to use or threaten violence. Further, each person who aids and abets the enterprise, or any participant in it, aids and abets the putting in jeopardy of other people. Section 924(c), on the other hand, reaches only a person who either carries or uses (either actually or constructively) a firearm during and in relation to a crime of violence, rather than the armed and unarmed alike. It could be said that a defendant who is present but unarmed during the commission of a crime may (again, by the division of labor) make it easier for another to carry a firearm and therefore aid and abet that act. However, a defendant who is not present (such as Medina) cannot be said to aid and abet the use or carrying of a firearm simply by aiding and abetting the overall enterprise in which the firearm is employed.

### CONCLUSION

For the foregoing reasons, the attempted robbery and conspiracy conviction under 18 U.S.C. § 1951 is affirmed, and the firearms

---

1. 18 U.S.C. § 2113(d) provides that "[w]hoever, in committing, or in attempting to commit, any [bank robbery], assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be fined not more than $10,000 or imprisoned not more than twenty-five years, or both."

conviction under 18 U.S.C. § 924(c) is reversed.