Gabriel **CAMACHO**, Petitioner,

v.

**UNITED STATES of America,**
**Respondent.**

No. 97 Civ. 3779(LLS),
No. 89 Cr. 99 (LLS).

United States District Court,
S.D. New York.

May 22, 2002.

Gabriel Camacho, New York City, Pro se.

United States Attorney, Southern District of New York (David L. Jaffe, of counsel), New York City, for Respondent.

## OPINION AND ORDER

STANTON, District Judge.

The petitioner seeks a writ of *habeas corpus,* pursuant to 28 U.S.C. § 2255, on nine grounds. Eight of these grounds (1–5, 7–9) lack merit, and are summarily disposed of below.

The sixth ground, challenging his 18 U.S.C. § 924(c) conviction, has merit and after a review of the evidence and the law, relief on that ground is granted.

## BACKGROUND

In 1989 Mr. Camacho was convicted of participating in a narcotics conspiracy, maintaining a "stash house" for the distribution of narcotics, possession of "crack" cocaine with intent to distribute it, and aiding and abetting the carrying of a firearm during and in relation to a narcotics offense.

After his two motions for a new trial were denied, Mr. Camacho was sentenced as a career offender which, since his offenses involved over 500 grams of crack, produced a Guidelines sentencing range of 35 years to life imprisonment. The Court departed downward to 15 years on each of the narcotics counts, to be served concurrently and to be followed by the mandatory consecutive five years on the firearm count, 18 U.S.C. § 924(c).

The Court of Appeals affirmed the conviction and sentence. *United States v. Irizarry, et al.,* 983 F.2d 1047 (2d Cir.1992)(unpublished table decision); *see also* Landis Affirmation, Ex. F.

Mr. Camacho filed the present § 2255 motion for *habeas* relief on April 22, 1997. The government filed its opposition on November 4, 1997. The motion was initially dismissed as untimely, but reinstated without opposition on March 9, 1999. Thereafter, Mr. Camacho obtained a series of long extensions of time to reply to the government's opposition, claiming his conditions of confinement hampered him in doing so. On December 13, 2001 he asked the Court to separate and hold in abeyance all his proffered grounds for relief except the sixth, since he was about to start serving his consecutive five-year sentence on the § 924(c) count. The Court directed the

government to respond, and also to address whether there was an issue under *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), which had been decided in the interim. By letter-brief on March 4, 2002 the government opposed deferral of consideration of any of the grounds, argued that *Apprendi* is inapplicable, and opposed Mr. Camacho's challenge to the § 924(c) count.

## DISCUSSION

Provident judicial administration requires all grounds urged in support of the petition under § 2255 to be adjudicated together. Considering and ruling on them *seriatim* would produce a multitude of occasions for appeal, and run counter to the statutory policy disfavoring successive *habeas* petitions. *See* 28 U.S.C. § 2255 (limiting successive motions to those certified by the Court of Appeals to present newly discovered evidence, or a new and retroactive rule of constitutional law).

The grounds urged by Mr. Camacho are disposed of as follows:

*First Ground*

■ Mr. Camacho's claim that he was arrested illegally, and therefore his oral statement and beeper should have been suppressed, fails because (a) it is not cognizable on his *habeas* application,* see *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 3052, 49 L.Ed.2d 1067 (1976), and (b) his arrest was legal. Regardless of the arresting agents' misidentification of him as someone they had seen three days earlier, there were still lawful grounds to arrest him.

The agents had stopped the car that Mr. Camacho was driving because they recognized its passenger, Joseph Irizarry, whom they were seeking to arrest. When Irizarry left the car there was a scuffle, during which a loaded gun fell from his waistband. The agents found vials of crack in the back seat of the car in which he had been riding. They arrested not only Irizarry but also the driver of the car, Mr. Camacho. That was a lawful arrest, and it gives no grounds to suppress his statement or beeper. Both agents testified that their identification was mistaken, so the jury was aware of that fact.

*Second Ground*

■ Mr. Camacho's claims that the government withheld exculpatory evidence necessary to his defense have no merit for the following reasons:

(A) Agent Tully's mistaken identification of Camacho was sufficiently disclosed to the jury. Mr. Camacho says Tully's misidentification could not have been an honest mistake, because Tully had apprehended the wounded and dying Acevedo (for whom he was "mistaken") after a shootout three days earlier, and this impairs Tully's whole credibility, which was not adequately cross-examined.

This point, however, fails. *First,* the agents' testimony was limited, and their motivation would not have detracted from the government's proof, which rested primarily on Irizarry's, not the agents', testimony. *Second,* challenging the misidentification would have defeated the purpose of severing Mr. Camacho's trial from that of his co-defendants, Garcia and Fulgencia. The severance served to exclude all circumstances of the shootout (in which Mr. Camacho played no part), whose drama might have prejudiced his trial.

(B) The government did not discover Irizarry's marijuana use while incarcerated until after both trials, and the fact does not exculpate Mr. Camacho of narcotics trafficking.

---

* Mr. Camacho not only had an opportunity for full and fair litigation of his Fourth Amendment claim, but he took advantage of it in an unsuccessful motion to suppress.

(C) Mr. Chaparro's post-trial recantation in favor of Mr. Camacho was considered by the Court on Mr. Camacho's second motion for a new trial, and its rejection was affirmed on appeal.

*Third Ground*

Mr. Camacho's view that there was a "variance" between the indictment and the conspiracy proved at trial is simply wrong. The proof established, in much greater detail, the conspiracy alleged in the indictment.

*Fourth Ground*

Irizarry's testimony sufficed to support the verdicts on the conspiracy and narcotics counts and, despite Mr. Camacho's assertion that Irizarry's testimony was "a complete fabrication," it was evidently believed by the jury.

*Fifth Ground*

Mr. Camacho's complaint that he was "convicted on the basis of an unspecified general verdict" on the conspiracy count implicates two concepts, neither of which has merit.

■■■ (A) To the extent it is a claim that the jury should have rendered specific verdicts with respect to each type of narcotic that the conspiracy planned to distribute, it fails because an illegal objective is only one element of a conspiracy. In order to convict for conspiracy, the jury must find that the agreement had an unlawful objective. In this case the indictment charged that the conspiracy was to distribute heroin, cocaine and "crack." The jury was instructed that to convict, they must find an agreement on at least one of the unlawful objectives and they must be unanimous as to which objective it was. It is presumed that the jury followed that instruction, and there is no obligation to require a verdict to state separately a finding on each element of an offense. *See United States v. Natelli,* 527 F.2d 311, 325 (2d Cir.1975), *Braverman v. United States,*

317 U.S. 49, 63 S.Ct. 99, 102, 87 L.Ed. 23 (1942).

■■■ (B) To the extent that the claim rests on inadequate determination by the jury of the nature and quantity of drugs to provide a proper foundation for his sentence, it implicates *Apprendi v. New Jersey.* Directly applicable is the language of Hon. John Sprizzo, U.S.D.J., in *Fiumara v. United States:*

> As an initial matter, the Fourth, Eighth, Ninth, and Eleventh Circuits, as well as many district courts, have ruled that *Apprendi* does not apply retroactively on collateral review. *See, e.g., Rivera v. United States,* 136 F.Supp.2d 263, 264–65 (S.D.N.Y.2001). Even were *Apprendi* applicable, petitioner's sentence did not exceed the alternative 240 month statutory maximum available—without a specific drug quantity finding by the Court—where there is an indeterminate amount of drugs. *See* 21 U.S.C. §§ 841(b)(1)(C), 960(b)(3); *see also United States v. Thomas,* 274 F.3d 655, 660 (2d Cir.2001)(en banc)(stating that *Apprendi* applies only "if the type and quantity of drugs involved in a charged crime may be used to impose a sentence above the statutory maximum").

*Fiumara,* 198 F.Supp.2d 427, 430–31 (S.D.N.Y.2002).

Similarly, even if *Apprendi* did apply in this case, Mr. Camacho was not prejudiced because his sentence of 180 months (i.e. 15 years) on the narcotics and conspiracy counts did not exceed the 240–month statutory maximum, and in fact it was far below the career offender Guidelines range of 210–262 months for violations of § 841(b)(1)(C), which would apply, under *Apprendi,* when the jury did not determine the drug quantity.

*Sixth Ground*

Mr. Camacho's motion for *habeas corpus* relief on the § 924(c) count is granted on this ground, which is discussed fully hereafter.

*Seventh Ground*

Mr. Camacho's claim that his sentence was based on narcotics quantities not charged in the indictment also implicates *Apprendi*, and fails because his sentence on the narcotics and conspiracy counts did not exceed the statutory or Guideline maximum for 21 U.S.C. § 841(b)(1)(C). See discussion of Fifth Ground, above. This Court determined the amount of crack with which Camacho was himself involved, and sentenced him on that basis, which the Court of Appeals specifically affirmed.

*Eighth Ground*

Mr. Camacho claims that he was "unconstitutionally sentenced as a career offender under the Guidelines," but suggests no constitutional, jurisdictional, or other support for that idea. His prior violent felony convictions required "career offender" treatment. *See* U.S.S.G. § 4B1.1.

*Ninth Ground*

Since, for the reasons indicated above, the grounds asserted by Mr. Camacho (except for the Sixth) have no merit, his counsel were not of inadequate assistance to him in not asserting them.

Accordingly, relief on the motion's grounds one through five, and grounds seven through nine, is denied.

### THE SIXTH GROUND: THE § 924(c) VIOLATION

Mr. Camacho's challenge to his § 924(c) conviction has merit, however. The evidence at trial was constitutionally insufficient to support a conviction for using, carrying, or aiding and abetting the use or carrying of a firearm. His conviction therefore is vacated and that charge against him is dismissed.

A claim of insufficient evidence rests on the due process guarantee "that no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof—defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 2787, 61 L.Ed.2d 560 (1979). *Habeas* relief is available when there has been conviction and punishment for an act that the law does not make criminal. "There can be no room for doubt that such a circumstance 'inherently results in a complete miscarriage of justice' and 'present[s] exceptional circumstances' that justify collateral relief under § 2255." *Davis v. United States,* 417 U.S. 333, 94 S.Ct. 2298, 2305, 41 L.Ed.2d 109 (1974)(alteration in original).

Furthermore, a conviction should be reversed without need to show cause for a procedural default, where a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier,* 477 U.S. 478, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397 (1986); *see also Bousley v. United States,* 523 U.S. 614, 118 S.Ct. 1604, 1611, 140 L.Ed.2d 828 (1998)(remanding for determination of actual innocence on defaulted claim).

No rational trier of fact could have found beyond a reasonable doubt that Mr. Camacho violated § 924(c). The evidence, viewed in the light most favorable to the prosecution, was insufficient to support his conviction. *See Jackson v. Virginia,* 99 S.Ct. at 2789.

The jury was instructed that it could convict Mr. Camacho either for carrying, using, or aiding and abetting the carrying or use of a firearm on January 28, 1989, i.e. when he drove a car in which Irizarry was riding with a gun in his waistband. (Indictment, Count 11; Tr. 761.)

The evidence was insufficient to support any one of those charges.

*Use*

 Use is *"active employment* of the firearm by the defendant." *Bailey v. United States,* 516 U.S. 137, 116 S.Ct. 501, 505–06, 133 L.Ed.2d 472 (1995)(emphasis in original). Neither Mr. Camacho nor Irizarry used the firearm on January 28. No party argues otherwise.

Since there was no use of the firearm, there could be no aiding or abetting of use of a firearm.

*Carrying*

 Without elaborating on the various definitions of "carry" given in the cases, the short answer stated in *Muscarello v. United States,* 524 U.S. 125, 118 S.Ct. 1911, 1917, 141 L.Ed.2d 111 (1998), is that " 'Carry' implies personal agency and some degree of possession," and Camacho's conduct does not qualify. Irizarry, not Mr. Camacho, carried the gun in his waistband (Tr. 317). The gun was not on Mr. Camacho's person. It was not within his reach. He had no possession of it. He had no control over it, for Irizarry refused to comply with his request that it be placed safely under the back seat.

Sensibly, the government told the jury that "the government is not claiming and has never claimed that Gabriel Camacho himself had drugs on him or himself was carrying a gun." (Tr. 613.)

Thus, what remains is whether Mr. Camacho aided and abetted Irizarry's carrying of the gun.

*Irizarry and the Gun*

To prevent unfair prejudice to Mr. Camacho and his co-defendant, who were not involved in the gunfight, wounding and death which followed the attempted robbery of the supposed buyers of heroin (who were actually an undercover agent and a confidential informant), the trial of that portion of the case was severed and conducted separately. The simpler and less dramatic trial of Mr. Camacho and his co-defendant Rampersaud on the narcotics charges and the § 924(c) count was held first.

Nevertheless, because Irizarry's acquisition of the gun took place in connection with the attempted robbery (which Irizarry planned, but in which he did not participate), most of the evidence concerning how and why he obtained the gun, and when he carried it, was elicited in the second trial, in which the defendants were Juan Garcia and Abelardo Fulgencia Garcia. References to the transcript of that trial will be identified as "Garcia Tr."

At the Garcia trial, Irizarry testified that he knew that Eddie and Roberta (the supposed heroin buyers, who were the targets of the robbery) were aware of his address, because he had taken them there. He was concerned that after the robbery they might come to that address seeking revenge. For that reason he asked Michael Chaparro to give him the gun which Chaparro had upstairs, so that he could defend himself in case Eddie and Roberta came after him. As Irizarry testified, (Garcia Tr. 371–73, 385):

A. . . . .So I didn't want Michael Chaparro to know that I had took them there, so I suggested to him to give me the gun which he had upstairs, which was the .9 millimeter.

Q. Did he give you that gun?

A. Yes, he did.

 . . . . .

Q. Why were you carrying a gun?

A. Well, I wanted to be prepared to defend myself just in case Eddie and Roberta would come looking for me.

Cooperating witness Chaparro confirmed that because Irizarry was nervous about the people he was robbing, Chaparro

gave him a gun "so he can sleep better." Chaparro testified (Garcia Tr. 681.):

Q. Did you do anything before Izzy left, before Izzy left your house?

A. Oh, yeah. Before Izzy left the house, he was kinds [sic] of nervous and panicked about robbing these people. So I gave him the gun. He asked me for the gun, so I gave him the 9 millimeter to take with him so he can sleep better.

Irizarry testified that he only carried the gun for three days, from the night of January 25th until he was arrested on January 28th. (Garcia Tr. 387.)

On January 28th, Irizarry was still carrying the gun when Mr. Camacho drove him to the Bronx. When Irizarry entered the car, Camacho asked that he put the gun in a safe place in the car, but Irizarry refused and kept it in his waistband. At the Camacho trial, Irizarry testified (Tr. 299–300):

A. Well, when I entered the car, he asked me if I had drugs on me and the gun on me and I told him yes.

We had spoke [sic] about putting the drugs in a safe place in the car and I agreed. Then he asked me to do the same with the gun and I told him I would rather keep it on me.

Q. Did you keep it on you?

A. Yes, I did.

Q. Where did you put the drugs in the car?

A. On the floor under the back seat.

The gun remained in Irizarry's waistband until they were both arrested.

That represents the totality of the evidence on this topic.

Thus, there was no evidence, direct or circumstantial, that Mr. Camacho either instigated or facilitated Irizarry's carrying of the weapon.

At most, the evidence showed that Mr. Camacho knew that Irizarry had a gun,

and that he aided Irizarry in delivering drugs by acting as his chauffeur. There is no evidence, however, that Camacho in any way aided or abetted the specific crime committed by Irizarry in carrying the gun.

Irizarry had independently decided to carry the weapon, for his own reasons, before he entered the car Mr. Camacho drove. Camacho neither facilitated nor promoted the carrying of the gun. Although Camacho learned that Irizarry was carrying the gun, "the evidence does not indicate that [Camacho] in any way prompted or induced him to do so." *United States v. Medina,* 32 F.3d 40, 45 (2d Cir.1994). As *Medina* held,

Contrary to the government's contention, Medina cannot be convicted as an aider and abettor under § 924(c) merely because he knew that a firearm would be used or carried and, with that knowledge, performed an act to facilitate or encourage the robbery itself. Rather, the language of the statute requires proof that he performed some act that directly facilitated or encouraged the use or carrying of a firearm.

*Id.*

The facts in *Medina* favored the prosecution far more than those here. Medina not only knew guns would be used in the robberies in that case, but he supplied one of the robbers with a revolver (which was not used, because the robber got a better one). Although recognizing that the evidence showed that Medina continued to participate in the enterprise knowing that guns would be carried, the court did "not agree that such evidence is enough to support his conviction for aiding and abetting under § 924(c)," and therefore reversed his conviction on that count. *Id.*

With respect to cases in other circuits which upheld § 924(c) aiding and abetting convictions for planning violent crimes with knowledge that firearms would be

used, but without "any act to facilitate or encourage the use of a firearm" in the underlying crime, the *Medina* court held flatly: "However, to the extent that these cases imply that a defendant can aid and abet the use or carrying of a firearm without performing some affirmative act relating to that firearm, we disagree." *Id.* at 46.

■ The evidence entirely fails to show that Mr. Camacho committed any act relating to the firearm, or that he in any way aided Irizarry's carrying of the firearm. The requirement of such evidence, in order for the conviction to stand, is absolute. *See United States v. Dickerson,* 508 F.2d 1216, 1218 (2d Cir.1975)("it must be proved that the defendant consciously assisted the commission of the specific crime in some active way").

Accordingly, the conviction on that count must be vacated for insufficient evidence.

*Pinkerton Liability*

■ The government argues that Camacho's § 924(c) conviction could be upheld on the theory that Irizarry's carrying of the gun was a foreseeable co-conspirator's action, under *Pinkerton v. United States,* 328 U.S. 640, 66 S.Ct. 1180, 1183–84, 90 L.Ed. 1489 (1946). The argument fails because, for good reasons, the Court did not give the jury a *Pinkerton* charge on the § 924(c) count (Tr. 577); and a reviewing court cannot uphold a conviction on a theory not charged to the jury. *United States v. Labat,* 905 F.2d 18, 23 (2d Cir.1990)(*Pinkerton* theory not available where jury not instructed it could find guilt on that basis); *Nye & Nissen v. United States,* 336 U.S. 613, 69 S.Ct. 766, 769, 93 L.Ed. 919 (1949)("A verdict on that [*Pinkerton*] theory requires submission of those fact issues to the jury.").

## CONCLUSION

Mr. Camacho's motion for *habeas corpus* relief is granted on grounds of insufficient evidence of a violation of §§ 924(c) and 2. Relief on all other grounds raised by Mr. Camacho is denied.

Accordingly, it is hereby ORDERED that

1. So much of the Court's April 10, 1992 Judgment as adjudges Mr. Camacho guilty of Count 11 ("Possession of a firearm in relation to a narcotics offense, Title 18 USC 924(c) & 2") and imposes a consecutive sentence of five years on Count 11 is vacated; and

2. Since Mr. Camacho's conviction and sentence on Count 11 are vacated for insufficiency of the evidence, he cannot be retried for that alleged offense. *See Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 2150–51, 57 L.Ed.2d 1 (1978); *Lockhart v. Nelson,* 488 U.S. 33, 109 S.Ct. 285, 289 n. 6, 102 L.Ed.2d 265 (1988). Accordingly, he shall be released, on the conditions of his supervised release on Counts One, Two and Ten, when he has completed service of his concurrent 15–year terms of imprisonment on those counts.

So ordered.