*150 SUMMARY ORDER
At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, at Foley Square, in the City of New York, on the 4th day of April, two thousand six.
AFTER ARGUMENT AND UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the District Court is AFFIRMED.
We assume familiarity with the facts of this appeal and recite them only as necessary to explain our conclusions. After a trial in November 2004, a jury found Hanania Nicholas guilty of conspiracy to commit robbery in violation of the Hobbs Act, 18 U.S.C. § 1951; attempted robbery and aiding and abetting an attempted robbery in violation of 18 U.S.C. §§ 2, 1951; and aiding and abetting the brandishing of a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. §§ 2, 924(c) (1)(A) (ii).
On March 7, 2005, the District Court sentenced Nicholas principally to 33 months’ imprisonment on the convictions for conspiracy and attempted robbery, to run concurrently, and 84 months’ imprisonment for aiding and abetting the brandishing of a firearm, to run consecutively to the 33-month prison term. Nicholas timely filed this appeal challenging the sufficiency of the evidence on which he was convicted, including that upon which Hobbs Act jurisdiction rested; the propriety of the District Court’s jury instruction with respect to aiding and abetting the brandishing of a firearm; and the District Court’s refusal to depart downwardly on the bases of extraordinary family circumstances and aberrant conduct.[1]
We review de novo a claim of insufficient evidence. United States v. Jackson, 301 F.3d 59, 64 (2d Cir.2002). In making such a claim the defendant bears a “heavy burden” because he “must prove that, viewing all of the evidence in the light most favorable to the government, no rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt.” United States v. Aleskerova, 300 F.3d 286, 292 (2d Cir.2002) (internal quotation marks omitted). Importantly, we must “defer to the jury’s determination of the weight of the evidence and the credibility of the witnesses, and to the jury’s choice of competing inferences that can be drawn from the evidence.” United States v. Velasquez, 271 F.3d 364, 370 (2d Cir.2001) (internal quotation marks omitted).
In order to establish jurisdiction under the Hobbs Act, the government must establish only “a very slight effect on interstate commerce.” United States v. Fabian, 312 F.3d 550, 553 (2d Cir.2002) (internal quotation marks omitted); see 18 U.S.C. § 1951(a). Indeed, “all that need be shown is the possibility or potential of an effect on interstate commerce, not an actual effect.” Fabian, 312 F.3d at 553 (internal quotation marks and citation omitted).
Nicholas urges that because the robbery targeted individuals, it is far less likely to affect interstate commerce and thus Hobbs Act jurisdiction is lacking. However, the robbery in this case targeted drug dealers at their stash apartment. We have held that the robbery of a drug dealer whose operation involves interstate commerce in order to obtain the assets of his illegal business constitutes the robbery of a business “operating in [interstate] *151 commerce.” United States v. Jamison, 299 F.3d 114, 121 (2d Cir.2002); see also Fabian, 312 F.3d at 555 (citing United States v. Genao, 79 F.3d 1333, 1336 (2d Cir.1996)).
There exists sufficient evidence from which a rational juror could conclude that the particular drugs and cash targeted in this attempted robbery either moved in interstate commerce or otherwise would have affected interstate commerce. Police officers Samuel Roman and Michael Sheil testified that inside the apartment where the attempted robbery occurred, they found over $28,000 in cash and a shipping container and a suitcase both containing marijuana, some of which was compressed. Investigator Billy Ralat testified that the vast majority of marijuana in New York is produced outside the state, and that shipping containers of the kind found in the apartment are used to ship drugs. A rational juror was free to credit all the above testimony and infer that the drugs and cash proceeds of the attempted robbery either moved in interstate commerce or were part of a business enterprise engaged in interstate commerce. See Fabian, 312 F.3d at 555-57; Jamison, 299 F.3d at 120-21. Accordingly, there was sufficient evidence to support Hobbs Act jurisdiction.
Nicholas next asserts that the evidence was insufficient to show that he knew that his companion, Lloyd, was planning to commit robbery, and thus his convictions for conspiracy and attempted robbery must fall. We disagree.
“All that is required to sustain [Nicholas’] conviction for conspiracy is some evidence from which it can reasonably be inferred that the person charged with conspiracy knew of the existence of the scheme alleged in the indictment and knowingly joined and participated in it.” United States v. Medina, 32 F.3d 40, 44 (2d Cir.1994) (internal quotation marks omitted); see also United States v. Santos, 425 F.3d 86, 96-99 (2d Cir.2005).
Detective Michael Kelly testified that during Nicholas’ debriefing, Nicholas stated that he accompanied Lloyd to get “blessed.” “Blessed,” in Kelly’s experience, meant making quick money through activities such as robbery. Further, Kelly testified that Nicholas admitted that he agreed to act, and in fact did act, as Lloyd’s lookout during the robbery in exchange for a cut of the proceeds. Sergeant Robert Rauhofer testified that Nicholas stated as much to him as well.
Kelly further testified that Nicholas possessed fairly detailed knowledge of two other attempted robberies of drug dealers. Although Nicholas never stated that he participated in those robberies himself, he testified to his knowledge of them and Lloyd’s participation in them. Finally, Nicholas admitted lying to the authorities about the true identity of Lloyd and his reason for being at the location of the attempted robbery.
Based on the testimony of Kelly and Rauhofer, and Nicholas’ own admission as to his knowledge of Lloyd’s illicit past and his repeated untruths, a rational juror could conclude that Nicholas knew of the scheme to rob a drug dealer and actively participated in it by acting as a lookout. Accordingly, there exists a sufficient evidentiary basis for Nicholas’ conspiracy and attempted robbery convictions.
Nicholas next urges that the evidence is insufficient to support his conviction for aiding and abetting the brandishing of a firearm during a crime of violence. To sustain Nicholas’ conviction, the government must point to proof from which a rational juror could infer that Nicholas knew that a gun would be used in the robbery and “performed some act that directly facilitated or encouraged the” *152 brandishing of the firearm. Medina, 32 F.3d at 45.
Nicholas contends that the evidence was insufficient to show his knowledge that Lloyd possessed a gun, and further, that even if he knew Lloyd possessed a gun, there is no evidence showing that he facilitated the use of the weapon. As to the first contention, Nicholas admitted that he knew Lloyd robbed drug dealers, drug dealers were dangerous targets that possessed guns, and he therefore “imagine[d]” Lloyd used guns to rob drug dealers. Nicholas also saw that Lloyd was carrying something in a black plastic bag as the two men traveled to the stash apartment. Further, crediting the testimony of Kelly and Rauhofer, Nicholas knew he and Lloyd were going to rob a drug dealer who likely was armed. A rational juror thus could infer that Nicholas knew Lloyd was carrying a firearm in the black plastic bag and would use it in order to effect the robbery.
As to the second contention, a rational juror could have inferred that by acting as a lookout, Nicholas facilitated Lloyd’s brandishing of the weapon during the attempted robbery. See Santoro v. United States, 187 F.3d 14, 17 (1st Cir.1999) (“Santoro accompanied the other defendants to the stash house and, whether or not he, himself, used or carried a firearm, he acted as a lookout for the others and, thus, facilitated his co-defendants’ use and carriage of the firearms.”) (citing Medina, 32 F.3d at 47).
Nicholas also challenges the District Court’s jury instruction with respect to aiding and abetting the brandishing of a firearm. “Jury charges are reviewed de novo.” United States v. Alfisi, 308 F.3d 144, 148 (2d Cir.2002) (internal quotation marks omitted). We “must focus first on the specific language of the charge” and then “examine the entire charge to see if— looked at as a whole—it conveyed to the jury a correct view of the law.” United States v. Pipola, 83 F.3d 556, 562-63 (2d Cir.1996). We “will not find reversible error unless a charge either failed to inform the jury adequately of the law or misled the jury as to the correct legal rule.” Alfisi, 308 F.3d at 148.
Nicholas’ challenge to the jury instruction is meritless. The District Court repeatedly stressed that mere knowledge that a gun would be used was insufficient for conviction. Further, the District Court stated three times that in order to convict under an aiding and abetting theory, the jury had to conclude that Nicholas actively facilitated the brandishing of the weapon—-the precise point Nicholas claims the District Court omitted. Accordingly, the District Court’s jury charge was proper.
Nicholas’ final challenge is to the District Court’s refusal to depart downwardly on the grounds of extraordinary family circumstances and aberrant conduct. However, a “district court’s denial of a request for a downward departure is not appealable unless the court misapprehended the scope of its authority to depart.” United States v. Mercado, 349 F.3d 708, 711 (2d Cir.2003); see also United States v. Valdez, 426 F.3d 178, 184 (2d Cir.2005). Further, we must “apply a presumption that district judges understand the much-discussed processes by which they may, in the circumstances permitted by law, exercise discretion to depart from the sentence range prescribed by the Guidelines calculus.” United States v. Brown, 98 F.3d 690, 694 (2d Cir.1996) (per curiam). That presumption “is overcome only in the rare situation where the record provides a reviewing court with clear evidence of a substantial risk that the judge misapprehended the scope of his departure authority.” Id.
The record establishes that the District Judge well understood his authority to depart downwardly and simply re *153 fused to do so on the facts of this case. For example, the Judge stated at sentencing, “I would like to help you, but I don’t think I can. I don’t think there is a factual basis for a departure that’s consistent with the prior law.” Other portions of the sentencing transcript similarly evince the District Judge’s correct understanding of his departure authority with respect to both departure grounds. Because Nicholas cannot overcome the presumption that the District Judge understood his departure authority, the Judge’s refusal to depart downwardly is not reviewable.
For the reasons set forth above, we AFFIRM the judgment of the District Court.

. Because Nicholas has not challenged his sentence on the ground of reasonableness, see United States v. Booker, 543 U.S. 220, 261, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), we do not review it on that basis.